In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-1261 & 11-1602

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARLYN J. BARNES and MELVIN B. TAYLOR,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 06 CR 00023—**Theresa L. Springmann**, *Judge*.

ARGUED SEPTEMBER 27, 2011—DECIDED OCTOBER 25, 2011

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. Upon re-sentencing, a district court judge respectively sentenced Marlyn Barnes and Melvin Taylor to 292 months and 188 months of imprisonment for conspiring to possess with intent to distribute more than five kilograms of cocaine. In a successive appeal before this Court, Barnes and Taylor challenge those sentences. They argue that, in light of the Supreme Court's recent decision in *Pepper v. United*

*States*, 131 S. Ct. 1229 (2011), the district court did not properly entertain new arguments when it re-sentenced them. They also advance that the district court abused its discretion by re-sentencing them to the same number of months to which it sentenced them originally. Notably, these new sentences remain within Guideline range.

We affirm the judgment of the district court.

## I. Background

### A. Factual Background[1]

Barnes and Taylor, with four other men, conspired to steal a shipment of drugs from a stash house in Fort Wayne, Indiana. They learned about their intended target from a confidential informant for the government, which had concocted the shipment and instructed its informant to provide Barnes and Taylor with the fictional details. In reality, no such shipment existed.

Unaware of the government's involvement, Barnes and Taylor persisted in their planning and, ultimately, procured the necessary equipment and weaponry to execute the theft. The government arrested them and their associates on May 5, 2006, as they arrived at a storage facility to pick up a van they intended to use in the heist.

---

[1] Though not relevant to this appeal, a more extensive description of the facts underlying the conspiracy may be found at *United States v. Barnes*, 602 F.3d 790, 792 (7th Cir. 2010) and *United States v. Taylor*, 600 F.3d 863, 866-67 (7th Cir. 2010).

Upon searching the men and their vehicles, the government uncovered two bullet-resistant vests, a Keltec automatic rifle, magazines and twenty-three rounds of ammunition for the Keltec rifle, a stolen Norinco assault rifle, a 75-round magazine and ninety-nine additional rounds of ammunition for the Norinco rifle, a loaded nine-millimeter pistol, thirty-six rounds of nine-millimeter ammunition, a loaded .40-caliber pistol, forty-six rounds of .40-caliber ammunition, and three additional 12-round magazines.

## B.  Procedural Background

The government indicted Barnes, Taylor, and their co-conspirators on May 24, 2006. It charged all six participants with conspiring to possess with intent to distribute more than five kilograms of cocaine, 21 U.S.C. § 846. It also charged Barnes and Taylor with possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c).

Barnes, Taylor, and two of their co-conspirators proceeded to trial. The original proceeding resulted in a mistrial because Barnes offered to testify on behalf of Taylor and the other two co-conspirators. The district court accordingly severed the defendants' trials, at which time the two remaining co-conspirators pled guilty.

Barnes and Taylor continued to trial. A jury convicted Barnes on the conspiracy and gun counts. In a separate trial, a jury convicted Taylor on both counts as well. In each trial, the juries found by special verdict that the

amount of drugs involved in the conspiracy exceeded five kilograms of cocaine.

### 1.   Sentencing and The First Appeal

As it sentenced Barnes and Taylor's four co-conspirators, the district court found that the conspiracy involved five-to-fifteen kilograms of cocaine. It, thus, calculated their base offense levels at 32.

### a.   Barnes' Proceedings

The initial pre-sentence report for Barnes similarly recommended a base offense level of 32, treating the conspiracy as involving five-to-fifteen kilograms of drugs. However, the probation officer revised the pre-sentence report to reflect a drug quantity of forty kilograms. Barnes objected to this quantity.

The district court ordered further briefing on the drug amount, but, rather than file additional materials, Barnes and the government stipulated that the conspiracy involved five-to-fifteen kilograms.

At sentencing, the district court rejected this stipulation and found that the conspiracy involved forty kilograms of cocaine. This finding raised Barnes' base offense level to 34. The district court refused to accept the stipulation because it viewed itself as unconstrained by the factual findings in the co-conspirators' sentencing proceedings. It wished to issue an independent finding on the quantity of drugs for which Barnes was

responsible. Yet, the district court also chose to sentence Barnes at the low end of his Guideline range because, it reasoned, there was no reason to treat him differently than his co-conspirators with regard to the amount of drugs involved. Once his enhancements were considered, the court sentenced Barnes to 292 months.

Barnes appealed, contesting the district court's finding that, for him, the conspiracy involved forty kilograms of cocaine and not five-to-fifteen kilograms. This Court agreed that such unjustified, disparate treatment among co-conspirators was clear error. We vacated Barnes' sentence and remanded to the district court for re-sentencing.

### b.  Taylor's Proceedings

Taylor's pre-sentence report recommended that the conspiracy involved forty kilograms of cocaine. Taylor objected to this amount and suggested that the conspiracy involved five-to-fifteen kilograms. At sentencing, the district court overruled Taylor's objection and found that the amount of cocaine involved was forty kilograms. It, therefore, calculated his base offense level as 34. Enhancements raised his base offense level to 36, resulting in an advisory Guideline range of 188 to 235 months of incarceration.

To minimize potentially unequal treatment of the co-conspirators based upon drug quantity, the district court sentenced Taylor to the low end of his Guideline range. He received a 188-month sentence.

Taylor appealed, alleging that the district court committed clear error when it determined that the amount of cocaine attributable to the conspiracy was forty kilograms. This Court agreed, again viewing as unacceptable the inconsistent factual finding on the amount of drugs involved. As we did in Barnes' case, we vacated Taylor's conviction and remanded his case for re-sentencing.

### 2.  Re-Sentencing

Upon re-sentencing, the district court dismissed as waived or beyond the scope of remand all new arguments raised by Barnes and Taylor.

### a.  The Scope of Remand for Barnes' Re-Sentencing

In our opinion on Barnes' first appeal, we addressed only his argument that the lower court erred in rejecting the parties' stipulation that the conspiracy involved five-to-fifteen kilograms of cocaine. *United States v. Barnes*, 602 F.3d 790, 792, 796 (7th Cir. 2010) ("Barnes's argument focuses on the fact that his co-defendants who pleaded guilty and were sentenced before him were sentenced based on the finding that the conspiracy only involved five-to-fifteen kilograms of cocaine."). We agreed with Barnes' argument, holding that "[w]ithout any justification for why one co-conspirator is responsible for a greater quantity of drugs than his fellow co-conspirators, such a discrepancy in factual findings is clearly erroneous." *Id.* at 796. We vacated his sentence and generally remanded his case for

re-sentencing. *Id.* at 797 ("[W]e vacate the district court's sentence of 292 months, and remand for re-sentencing.").

On remand, the district court interpreted our opinion as an order to "resolve the discrepancy in factual findings" used when it sentenced Barnes. The district court understood this discrepancy to be its "incongruou[s] reject[ion] [of] the parties' post-trial joint stipulation that the conspiracy involved between 5 and 15 kilograms of cocaine . . . ." The district court re-sentenced Barnes using the post-trial stipulation to calculate his Guideline range. It sentenced Barnes anew to 292 months of imprisonment for the conspiracy count of the indictment.

### b. Barnes' Waived Arguments

At re-sentencing, the district court dismissed as waived several new arguments Barnes raised in his post-remand sentencing brief. Barnes asked the court to disregard the parties' stipulation that the conspiracy involved between five-to-fifteen kilograms and, instead, treat the drug quantity at issue as less than 25 grams. He felt the larger drug quantity overstated his criminality. He additionally argued that, due to the fictitious nature of the drugs and the government's ability to dictate the amount, the court should treat the amount of drugs involved as zero grams or find that he could not have completed the conspiracy. Finally, he requested that the court reconsider his four-level enhancement for being an organizer or leader of five or more participants in the commission of an offense, as well

as his two-level enhancement for willful obstruction of justice.

The court rejected Barnes' argument that the amount of drugs involved should be considered less than the amount to which his co-conspirators stipulated because "[the argument] d[id] not appear to have been . . . raised on appeal, and the Court of Appeals did not explicitly discuss it." The court also noted that even if the argument were not waived, it "would not find it to have any merit."

The court similarly disregarded Barnes' subsidiary argument that he was incapable of producing any drug amount. The court found that this argument, too, "was not raised on appeal and [w]as outside the scope of remand." As before, the court elaborated that "had the issue been properly raised, and remanded for [its] determination, [it] would [have] reject[ed] it."

With respect to his objection to its sentence enhancements, the district court held that Barnes "could have appealed the application of these enhancements [during his first appeal]." Since he did not do so, the court ruled that he waived his arguments against them such that "they d[id] not fall within the permissible areas of discussion . . . on remand."

The district court excluded each of these arguments as ones that could have been raised in his first appeal, were not so raised, and, therefore, were beyond the scope of this Court's remand.

### c.   The Scope of Remand for Taylor's Re-Sentencing

As with Barnes, the only sentencing issue we confronted on Taylor's appeal was whether the district court erroneously calculated his Guideline range based upon forty kilograms of cocaine. *United States v. Taylor*, 600 F.3d 863, 870-71 (7th Cir. 2010). We agreed with Taylor:

> The district court . . . sentenced . . . four co-conspirators on the finding that the conspiracy involved five-to-fifteen kilograms of cocaine. Then, at the sentencing hearings for Barnes and Taylor, the district court found that the conspiracy involved forty kilograms of cocaine. . . . [W]ithout a justification for treating these co-defendants differently when determining the amount of drugs attributable to the conspiracy, it was clear error for the district court to find one drug quantity for [the four co-defendants], and a different drug quantity for Taylor on an identical record.

*Id.* at 871-72. We vacated Taylor's sentence and ordered a general remand for re-sentencing. *Id.* at 872 ("We vacate Taylor's sentence and remand for re-sentencing.").

The district court understood the remand order as instructions to re-sentence Taylor based on a drug quantity consistent with that attributed to his co-conspirators: "[t]he sufficiency of the factual support for using forty kilograms to determine the base offense level was not the issue that ultimately required remand. Rather, it was . . . the sentencing of other co-conspirators on the basis of factual stipulations for between five and fifteen kilograms of cocaine." Consequently, the court recalculated Taylor's Guideline range using five-to-fifteen

kilograms as the pertinent drug quantity. It re-sentenced him to 188 months in prison for the conspiracy count of the indictment.

### d. Taylor's Waived Arguments

In his post-remand re-sentencing brief, Taylor raised new arguments that the district court dismissed as waived. He asked that the court sentence him based on a drug quantity of 25 grams or fewer or, alternately, of two to three-and-a-half kilograms. He argued that these reduced amounts were appropriate given the fictitious nature of the drugs involved, the government's control over the amount of drugs in the fake shipment, and his smaller role in the conspiracy.

As an initial matter, the district court rejected these arguments because they "d[id] not appear to have been . . . raised on appeal, and the Court of Appeals did not explicitly discuss [them]." However, the court also noted that "[e]ven if [the arguments] were proper to address on remand because [they] related to the drug quantity, the [c]ourt would not find [them] to have any merit." In particular, the court found that the government "established, by a preponderance of the evidence, that the conspiracy to possess with intent to deliver cocaine involved, at least, between five and fifteen kilograms of cocaine."

As it did with Barnes, the district court viewed Taylor's arguments as waived and beyond the scope of remand. Both Barnes and Taylor appeal their sentences.

## II.  Discussion

### A.  The Scope of Remand and the Impact of *Pepper v. United States*

We first address whether the district court improperly determined the scope of remand when it refused to entertain Barnes and Taylor's new arguments at re-sentencing. In particular, we consider whether *Pepper v. United States,* 131 S. Ct. at 1229, abolishes waiver in the context of re-sentencing or whether "de novo" re-sentencing retains a more limited meaning. We conclude that, upon a general remand for re-sentencing, a district court *may* permit new arguments and evidence as it deems necessary to re-fashion its sentence. General remand does not, however, entitle the defendants to present new arguments and evidence beyond that pertinent to the issues raised on appeal.[2]

We review a district court's determination of the scope of remand de novo. *United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002) (citing *United States v. Watson*, 189 F.3d 496, 500 (7th Cir. 1999)).

### 1.   The Scope of a General Remand for Re-Sentencing

This Court's decision to remand and our corresponding opinion dictate the scope of that remand. *United States*

---

[2]  This case does not present the question of whether a district court must consider post-sentencing rehabilitation upon a general remand for resentencing. We, therefore, reserve the issue.

*v. Avila*, 634 F.3d 958, 961 (7th Cir. 2011). If this Court remands to correct a "discrete, particular error that can be corrected . . . without . . . a redetermination of other issues, the district court is limited to correcting that error." *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996). The Court's silence on an issue raised on appeal means "it is not available for consideration on remand." *See Husband*, 312 F.3d at 251 (citing *Barrow v. Falck*, 11 F.3d 729, 730 (7th Cir. 1993)). Moreover, any issue that could have been raised on appeal but was not is waived and, therefore, not remanded. *See Husband*, 312 F.3d at 250-51; *see also Parker*, 101 F.3d at 528 ("A party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal because the remand did not affect it.").

### a.  The Impact of *Pepper v. United States*

Barnes and Taylor contend that they were entitled to the district court's consideration of any and all arguments they raised upon re-sentencing. They refer this Court to the Supreme Court's recent decision in *Pepper v. United States*, 131 S. Ct. at 1229, which they read as holding that an order for general remand by the Court of Appeals erases the original sentencing proceeding and, with it, any issues of waiver.

In *Pepper*, the Supreme Court denied the appellant's claim that the "law of the case" doctrine prevented a new judge, upon re-sentencing, from disturbing the prior sentencing judge's downward departure from the defen-

dant's recommended Guideline sentence. *Pepper*, 131 S. Ct. at 1251. The Court equated general remands for re-sentencing to an order for de novo re-sentencing, noting that such orders "effectively wiped the slate clean." *Id.* at 1250-51. As such, it concluded, "an appellate court when reversing one part of a defendant's sentence 'may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a).'" *Id.* at 1251 (quoting *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)).

At issue, then, is what the *Pepper* Court intended by the term "de novo" in the re-sentencing context. Barnes and Taylor interpret the Court's dicta that general remand orders "wipe the slate clean" as entitling them to present any and all new arguments at re-sentencing—regardless of their relevance to the error giving rise to the remand.

Although few courts have yet to apply *Pepper*, and the Supreme Court has not yet defined the scope of this case, no court has concluded that *Pepper* operates to abolish waiver in the context of re-sentencing.[3] As it

---

[3] Even the Sixth and Tenth Circuits, which adopt a more lenient view of the scope of remand than does the Seventh Circuit, do not interpret *Pepper* as eliminating waiver. *See United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011) (favoring, in a post-*Pepper* regime, a rule whereby a district court "do[es] not make inquiry into whether the issue presented is antecedent

(continued...)

discusses de novo re-sentencing, the Court emphasizes a district court's ability to "effectuate its sentencing intent," *id.* at 1251, underscoring its concern that re-sentencing courts should not be bound by their predecessors or rotely input the Court of Appeal's changes into their original sentencing calculations. Its holding thus stands for the proposition that general remands render a district court unconstrained by any element of the prior sentence. *Id.*

Allowing a district court to freely balance already and properly raised arguments to preserve or revise its sentencing objectives does not equate to carte blanche for defendants to raise new arguments unrelated to the issues raised on appeal. To the contrary, the only new evidence that the Supreme Court considered and approved of is that of a defendant's postsentencing rehabilitation. *Id.* at 1236 ("We hold that when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the de-

---

[3] (...continued)

to or arises out of the correction on appeal. Instead the district court is to look to the mandate for any limitations on the scope of the remand and, in the absence of such limitations, *exercise discretion in determining the appropriate scope*") (emphasis added); *see also United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011) (holding, in a post-*Pepper* regime, that "[a] general remand allows the district court to re-sentence the defendant de novo, which means that the district court *may . . .* conside[r] new evidence and issues" (quoting *United States v. Moore*, 131 F.3d 595, 597-98 (6th Cir. 1997))) (emphasis added).

fendant's postsentencing rehabilitation . . . ."). Barnes and Taylor attempt to expand the *Pepper* Court's holdings so that, upon general remand, a defendant enjoys a manifest right to raise new issues. We decline the invitation to do so. *See, e.g., United States v. White*, 406 F.3d 827, 831-32 (7th Cir. 2005) ("Our case law has characterized the scope of the remand issue using two analogies: (1) that upon remand the district court is presented with a 'clean slate' or (2) the district court may 'unbundle the sentencing package.' There is no meaningful distinction in this phraseology.").

We, therefore, hold that when a case is generally remanded to the district court for re-sentencing, the district court may entertain new arguments as necessary to effectuate its sentencing intent, but it is not obligated to consider any new evidence or arguments beyond that relevant to the issues raised on appeal. Accordingly, the district court did not err by refusing to consider Barnes and Taylor's new arguments as beyond the scope of remand.

### 2. Harmless Error Applies

Assuming arguendo that the district court should have considered Barnes and Taylor's new arguments within the scope of remand, its error is harmless. *See, e.g., United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008) (applying harmless error analysis to sentencing). An error is harmless if it "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992). The district court in this

case examined both defendants' waived arguments and explained why they would not prevail even if it had formally reached their merits. *See* discussion *supra* Part I.B.2b, d. Since it expressly stated that these arguments would not have altered the sentences it pronounced, any error is harmless.

## B.   Abuse of Discretion

Barnes and Taylor also appeal their sentences as the result of procedural error and as unreasonable. Accordingly, they argue that the district court abused its discretion by imposing them.

Our review of a district court's sentencing decision is a two-step analysis. *United States v. Hall*, 608 F.3d 340, 346 (7th Cir. 2010). First, we review de novo any alleged procedural error. *Id.* Second, we examine the reasonableness of a sentence imposed by a district court for abuse of discretion. *United States v. Boling*, 648 F.3d 474, 483 (7th Cir. 2011).

### 1.   Procedural Error in the Application of 18 U.S.C. § 3553(a)

Barnes and Taylor each claim that the district court committed procedural error when it failed to consider mitigating evidence about their background, character, and conduct. *See generally Boling*, 648 F.3d at 483 (listing failure to consider the factors listed in 18 U.S.C. § 3553(a) as procedural error).

### a. Barnes' Family Circumstances

Barnes contends that the district court refused to exercise its discretion to reduce his sentence based on the "hardship his children would suffer as a result of his incarceration." He suggests that the court wrongly disregarded the hardship on his children as the result of his own conduct, thereby affording the argument insufficient consideration.

At Barnes' re-sentencing, the district court made the following comments in response to his mother's testimony and his request that it consider his family circumstances as mitigating evidence:

> [E]very time somebody is sentenced in this court or any other court and has to leave their family, it does work a hardship not only on the individual offender like Mr. Barnes, but on the entire family. And that's the consequence of the conduct. And it's the consequence of what our system of judgment provides in having to sentence somebody to do a term of incarceration like Mr. Barnes, there will be these kinds of sad circumstances. . . . But that cannot be a justification or a reason for the Court to do other than what the law provides and allows for in terms of what the Court can do for sentencing, because the circumstances of this family are similar to others who have to go through this process, because a loved one has been sent to jail.

In Barnes' view, the district court summarily rejected his family circumstances as mitigating evidence because he was responsible for imposing that hardship upon his

family. In doing so, he argues, the district court ran afoul of this Court's ruling that "the fact that the consequences of incarceration are attributable to [a defendant's] own misconduct may be a factor in the analysis but . . . not the sole factor nor [the] dispositive one." *United States v. Schroeder*, 536 F.3d 746, 755-56 (7th Cir. 2008).

However, the district court's explanation for its sentence calculation counsels against Barnes' interpretation of its earlier comments. As the court announced its ruling, it stated:

> The first factor I assessed was the seriousness of the offense. I noted that this case involved a plan to carry out the armed robbery of other armed individuals . . . . Mr. Barnes also anticipated selling a large quantity of drugs into the community. The fact that Mr. Barnes had high capacity weapons and bullet proof vests, further spoke to the violent potential of his crime and his willingness and preparedness to engage in that violence. . . . I also addressed the need to promote respect for law, noting that Mr. Barnes not only shunned the law for his own gain as a get-rich-quick-scheme, but recruited others into his criminal activity. I note further that Mr. Barnes noted an absolute disregard for the law when his committed perjury . . . . I noted at sentencing that Mr. Barnes' criminal activity had escalated . . . . In consideration of these factors, I believed that a sentence of 292 months was the sentence that best took into account all the purposes of punishment . . . . That same belief holds true today. In consideration of mitigating

factors, the Court . . . is sympathetic to [his] family circumstances, but finds that they do not outweigh the seriousness of the offense, or the need to impose a sentence that adequately addressed the other purposes of punishment.

The court declined to reduce Barnes' sentence in light of his family circumstances not because his conduct created the hardship, but because his family difficulties were not so extraordinary as to outweigh or mitigate against the other § 3553(a) factors the court considered. The court's analysis does not, as Barnes alleges, give short shrift to his family circumstances. Rather, it fully considers his circumstances and deems them insufficient to merit a sentence reduction.

To this end, Barnes' assertion that the court viewed itself as legally unable to weigh the hardship on his children and, therefore, failed to exercise its discretion similarly lacks merit. Reading the court's comments at sentencing in their entirety, Barnes' selected phrases—"cannot be a justification," "what the Court can do for sentencing," and "what the law provides and allows for"—communicate the court's unwillingness to reduce his sentence based on family hardship, not its legal inability to do so. In this case, the court's refusal to reduce Barnes' sentence in light of other § 3553(a) factors reflects judicial discretion, not its absence.

### b. Taylor's Criminal History and Character

Although he raises the argument as an attack on his sentence's reasonableness, Taylor maintains that his

sentence does not adequately reflect his role in the conspiracy, absence of criminal history, and rehabilitative prospects. The district court evaluated and declined to apply these factors to reduce the sentence it imposed. It stated in its opinion:

> [T]he evidence is that the Defendant agreed with others to rob a stash house to obtain drugs, was prepared to carry out the plan, and expected to be successful in the execution of the plan. He was not puffing when he indicated, and then demonstrated, his willingness to obtain the shipment of drugs by force. He anticipated that the stash house would be armed and took this factor into account in his plan, arriving in Fort Wayne with firearms, ammunition, and additional people who were willing to help him carry out the plan. He met with the other conspirators to discuss the details of the plan, including who would enter the stash house and who would stand guard. . . . [T]here are no mitigating factors that suggest a sentence of 188 months is greater than necessary to accomplish the purpose of punishment. The Defendant notes that he participated in the Federal Job Corp Program and was employed at a cabinet company. The Defendant's participation in the Job Corp ended in 2001 as did his employment and [he] does not indicate what he did from 2001 until May 2006 when he conspired to possess with intent to distribute cocaine. . . . The Court does not find the Defendant's vocational training and minimal employment to be a mitigating factor that justifies reducing his sentence. The Defendant's lack of crim-

inal history, which he also points to as a mitigating factor, is already accounted for in his advisory Guideline range and in this Court's imposition of 188 months imprisonment.

The district court examined the mitigating evidence that Taylor presented. It incorporated his criminal history into his base Guideline range and afforded no reductive weight to his participation in the conspiracy or history in the Job Corp. Accordingly, it properly considered the sentencing factors as required by § 3553(a) and committed no procedural error. *See United States v. Ruzzano*, 247 F.3d 688, 699 (7th Cir. 2001) ("We will not find an abuse of discretion where, as here, the defendant merely disagrees with the weight that the district judge assigned to various mitigating factors.").

### 2. Reasonableness

Both Barnes and Taylor's sentences are substantively reasonable. A correctly calculated, within-Guidelines sentence is entitled to a presumption of reasonableness. *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010). To sustain the presumption, a district court need provide only a justification for its sentence "adequate to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2010) (quoting *United States v. Omole*, 523 F.3d 691, 698 (7th Cir. 2008)) (internal quotation marks omitted).

Barnes does not dispute the substantive reasonableness of his sentence.

Taylor argues that re-sentencing him to the same 188 months to which he was originally sentenced cannot be reasonable because, based on all of the same evidence except a lower drug amount, the court subjects him to the high end of his new Guideline range when it previously found him entitled to be sentenced on the low end of his Guideline range. He states that his new sentence "fails to reflect (to his advantage) the only variable that changed between May[] 2009 and his re-sentencing in March[] 2011; a lesser amount of cocaine being attributable to the conspiracy."

The Supreme Court, in *Pepper,* made clear that, on general remand, a re-sentencing judge is not bound by the findings of the original sentencing proceeding. *Pepper*, 131 S. Ct. at 1250-51. Consequently, the district court was not required to apply a low-end-of-the-Guidelines sentence simply because it had done so before.

In this case, the district court explained it imposed the same 188-month sentence on Taylor because that number of months remained necessary to reflect the seriousness of the offense, to promote respect for the law, and to protect others from Taylor's crimes. It also explained its decision to use the high end of the new, lower Guideline range, stating that "the Court . . . first imposed the 188-month sentence consider[ing] that the amount of drugs used to determine the sentences of other Codefendants involved in the same conspiracy was less than 15 kilograms. It was for this reason that [it] sentenced [Taylor] to the low end of the advisory range that had been calculated using forty kilograms of

cocaine." The original 188-month sentence thus departed from the 235 months available to the court in recognition of the fact that the court used a lower drug quantity to calculate his co-conspirators' Guideline ranges. Since, upon re-sentencing, all co-conspirators were sentenced based on an consistent amount of drugs, the court found no compelling reason to depart from the maximum sentence available to it under the new Guideline range.

The district court's analysis evinces the perception of fair sentencing, *Scott*, 555 F.3d 608, and reasonableness. It did not abuse its discretion by imposing upon Barnes a 292-month sentence or upon Taylor a 188-month sentence.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.