In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1401

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LISA A. LEWIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-CR-219 — **William C. Griesbach**, *Chief Judge.*

ARGUED SEPTEMBER 8, 2016 — DECIDED NOVEMBER 16, 2016

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Over a seven-year period, Lisa A. Lewis embezzled more than $2 million from twelve people who were 75 to 92 years old. Pursuant to a plea agreement, she pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343, and the government agreed to a specific sentencing guidelines calculation. The government also agreed to

recommend no more than ten years' imprisonment at her sentencing hearing.

At the first sentencing hearing, the district court sentenced Lewis to fifteen years' imprisonment. Shortly thereafter, we decided *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015). Lewis appealed raising only the issue of her supervised-release conditions. In light of *Thompson*, we remanded for resentencing. Before the resentencing hearing, Lewis filed a motion arguing for the first time that the government had breached the plea agreement. The district court denied the motion and held that Lewis had waived this argument by failing to raise it at the first sentencing or on the first appeal. The district court then sentenced Lewis to the same fifteen-year term.

On appeal, Lewis now argues that she did not waive her argument that the government breached the plea agreement. She reasserts that argument now. Lewis also argues that the district court erred at sentencing by (1) applying a sentencing enhancement based on the vulnerability of her victims and (2) imposing a substantively unreasonable sentence.

We hold that the district court did not err by refusing to hear Lewis's argument, but it did err by not affirmatively acknowledging that it had the authority to do so. But because the district court alternatively rejected that argument, and because we believe that the argument is meritless, we hold that the district court's error is harmless. Finally, we hold that the district court did not err at sentencing because the vulnerable-victim enhancement was properly applied and the district court's sentence was substantively reasonable.

## I. BACKGROUND

From 2006 until 2013, Lewis fraudulently held herself out as an account representative with Fidelity Investments to at least a dozen "investors" whose ages ranged from 75 to 92. Although she had been a registered broker with the Financial Industry Regulatory Authority from 1990 until 2006, she was neither a registered broker nor affiliated with Fidelity Investments during this fraudulent scheme. Under the scheme, Lewis convinced her investors to set up investment accounts at Fidelity. Unbeknownst to her investors, however, Lewis opened the accounts as joint accounts, including her name on each account. This allowed Lewis to transfer funds from the accounts to her own personal account without her investors' consent or knowledge. Lewis applied for and received debit cards associated with some of these accounts. She also forged some of her investors' signatures on checks drawn on their accounts. She used the debit cards and fraudulent checks to withdraw additional funds from the accounts. Over the course of this seven-year scheme, Lewis embezzled more than $2 million from her victims.

A grand jury indicted Lewis on five counts of wire fraud in violation of 18 U.S.C. § 1343. On March 14, 2014, she pled guilty to one of those counts pursuant to a plea agreement. In exchange for Lewis's guilty plea, the government made several promises. First, the government promised "to recommend no more than 10 years imprisonment and the maximum period of supervised release." (R. 17 at ¶ 24.) Second, the government agreed to the following sentencing guidelines calculation:

1. A base offense level of 7 under U.S.S.G. § 2B1.1(a)(1);

2. Specific offense level increases of 16 levels for the amount of the loss under U.S.S.G. § 2B1.1(b)(1)(I), 2 levels for an offense involving 10 or more victims under U.S.S.G. § 2B1.1(b)(2)(A), and 2 levels for an offense involving sophisticated means under U.S.S.G. § 2B1.1(b)(10);

3. A 2-level increase for the abuse of a position of trust under U.S.S.G. § 3B1.3;

4. A 4-level increase for an offense involving a large number of vulnerable victims under U.S.S.G. § 3A1.1; and

5. A 3-level decrease for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and 3E1.1(b).

This agreed-upon calculation resulted in a total offense level of 30. Based on this offense level and Lewis's criminal history category of I, Lewis's guideline range under the plea agreement was 97 to 121 months.

The plea agreement also included several important reservations. First, the agreement provided that "[b]oth parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process … ." (R. 17 at ¶ 22.) Second, the agreement provided that "[b]oth parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range … ." (R. 17 at ¶ 23.) Finally, the agreement acknowledged that the district court was not bound by the agreement or by the sentencing guidelines. (R. 17 at ¶ 25.)

The probation office then completed a Presentence Investigation Report ("PSR"). The probation office's guideline calculation included two additional enhancements: (1) a 2-level increase for the use of a means of identification under U.S.S.G. § 2B1.1(b)(11)(C)(i) and (2) a 2-level increase for obstruction of justice under U.S.S.G. § 3C1.1. The calculation in the PSR also included only a 2-level vulnerable-victim enhancement under U.S.S.G. § 3A1.1(b)(1), rather than the 4-level enhancement contemplated in the plea agreement. The probation office then presented the PSR to Lewis and to the government for comment. Lewis objected to the additional enhancements. The government did not object to any of these recommendations.

The probation office then asked the government to comment on Lewis's objections to the additional enhancements. The government responded in an email to the PSR preparer. Regarding the means-of-identification enhancement, the government stated that the "facts outlined in the PSR are accurately relayed and seem to fit within the parameters of the guideline enhancement." (R. 59-1.) Regarding the obstruction-of-justice enhancement, the government stated that "the PSR accurately relays the facts that arguably fall within the umbrage of the guideline enhancement." (R. 59-1.) The final PSR included the additional enhancements. It also included several victim impact statements. Based on a calculated total offense level of 32, Lewis's guideline range under the PSR was 121 to 151 months.

The government and Lewis both filed sentencing memorandums. Lewis asked for an eight-year prison term, arguing that this sentence would have the same deterrent effect as a ten-year sentence. The government's response did not address

the guidelines; instead, it emphasized the seriousness of the offense and recommended a ten-year sentence.

At sentencing, the district court once again asked the government to comment on Lewis's objections to the additional enhancements in the PSR. Mindful of the plea agreement, the government first expressed that it was not advocating for the additional enhancements. It then repeated the recommendations that it had given to the probation office. The district court followed the PSR and concluded that Lewis's total offense level was 32. The government then argued that a 4-level vulnerable-victim enhancement—as contemplated in the plea agreement—rather than the 2-level vulnerable-victim enhancement included in the PSR should apply. The district court rejected that argument. The court then sentenced Lewis to fifteen years' imprisonment, a sentence five years higher than was contemplated in the plea agreement and twenty-nine months higher than the top end of the guideline range for an offense level of 32.

On January 5, 2015, Lewis appealed only her conditions of supervised release. In light of our decision in *Thompson*, 777 F.3d 368, the government and Lewis submitted a joint motion to vacate the sentence and to remand for resentencing to correct the supervised release conditions contained in the original sentencing order. We granted that motion and remanded for resentencing on March 12, 2015.

On February 1, 2016, Lewis filed a motion with the district court seeking to reassign her case to a new sentencing judge, to strike the PSR's guideline calculation, to strike the government's sentencing memorandum, and to seal the sentencing transcript. In that motion, Lewis claimed for the first time that the government had breached the plea agreement. The district

court denied Lewis's motion, holding that she had waived any argument regarding a breach of the plea agreement by not presenting it at the first sentencing hearing or on the first appeal. The district court also concluded that, even absent a waiver, Lewis was "not entitled to relief because the government did not breach the plea agreement." (R. 61 at 5.)

Before the resentencing hearing, Lewis again filed objections to enhancements in the PSR. During resentencing, she specifically objected to the means-of-identification 2-level enhancement and the vulnerable-victim enhancement. The district court rejected Lewis's argument regarding the vulnerable-victim enhancement and applied the 2-level increase contemplated in the PSR. The district court accepted Lewis's argument regarding the means-of-identification enhancement and dropped that 2-level increase. The district court then recalculated Lewis's guideline range and found that her total offense level was 30, which, based on her criminal history category of I, resulted in a guideline range of 97 to 121 months. The district court then resentenced Lewis to the same sentence of fifteen years' imprisonment despite the lower offense level and guideline range.

Lewis now appeals the district court's denial of her February 1 motion and the district court's sentence. Because the government did not breach the plea agreement and because the sentence was proper, we agree with the district court.

## II. Analysis

On appeal, Lewis makes four arguments: (1) the district court erred when it concluded that Lewis waived her right to assert that the government had breached the plea agreement by failing to raise this argument at the original sentencing or

on the original appeal; (2) the district court erred when it concluded that the government did not breach the plea agreement; (3) the district court erred when it applied the two-level vulnerable-victim enhancement; and (4) the district court's sentence of fifteen years' imprisonment was substantively unreasonable. We first address her arguments regarding the plea agreement. We then turn to her arguments regarding the district court's sentence.

### A. Breach of the Plea Agreement

Lewis's first two arguments on appeal center on the government's alleged breach of the plea agreement. The district court held that Lewis waived any argument regarding the government's alleged breach by not raising it at the original sentencing in the district court or on the original appeal in this court. Thus, the district court held that this argument was outside the scope of the remand. "We review a district court's determination of the scope of remand *de novo*." *United States v. Mobley*, 833 F.3d 797, 803 (7th Cir. 2016).

The scope of a remand is determined by our opinion granting that remand. *United States v. Avila*, 634 F.3d 958, 961 (7th Cir. 2011). If our opinion "identifies a discrete, particular error that can be corrected on remand without the need for a redetermination of other issues, the district court is limited to correcting that error." *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996). On the other hand, if the case is generally remanded for resentencing, "the district court *may* entertain new arguments as necessary to effectuate its sentencing intent, but it *is not obligated* to consider any new evidence or arguments beyond that relevant to the issues raised on appeal." *United States v. Barnes*, 660 F.3d 1000, 1007 (7th Cir. 2011) (emphasis added). Thus, when a case is generally remanded, a

district court has some discretion as to which—if any—new arguments it will hear. *Id.* at 1007–08.

A remand in light of *Thompson* vacates the entire sentence, allowing the district court to alter any aspect of that sentence at resentencing. *Thompson*, *777* F.3d at 382; *see also Mobley*, 833 F.3d at 801. As such, a *Thompson* remand is a "full" or general remand unless our opinion or the formal mandate granting the remand includes an explicit limitation. *Mobley*, 8*33* F.3d at 801. Following the rationale of *Barnes*, on a *Thompson* remand, a district court may entertain new arguments if it so chooses. *Barnes*, 660 F.3d at 1007. "The defendant need not have raised these arguments on appeal; once the case is remanded for a complete resentencing, the defendant may assert any argument she wishes." *Mobley*, 833 F.3d at 802. The district court then "may choose to exercise its discretion in a manner that does not consider any new evidence or new arguments …, and it may choose to impose the exact same sentence as was imposed at the original sentencing hearing." *Id.*

Here, Lewis could have raised all of her arguments regarding the government's alleged breach of the plea agreement at the first sentencing and then on her first appeal. But she chose not to raise them. Because we generally remanded this case in light of *Thompson*, the district court at resentencing could have chosen to hear Lewis's arguments regarding the breached plea agreement, but it was not obligated to do so. *Id.* at 801–02. Therefore, the district court did not err in refusing to hear Lewis's newly raised arguments.[1] What the court had to do,

---

[1] We recognize that the plea agreement still binds the government at resentencing. Thus, had Lewis alleged that the government breached the plea agreement in a new or different way at resentencing, the district court

however, was "acknowledge that it ha[d] the *authority* to hear new arguments, so that we … know on appeal that it exercised its discretion in either accepting or rejecting new material." *Id.* at 802. Here, the district court did not acknowledge its authority, and its failure to do so constitutes a mistake of law. *Id.* at 803.[2] But because the district court also considered and rejected Lewis's breach of the plea agreement argument, and because we agree that the government did not breach the plea agreement, any error is harmless. *See Barnes*, 660 F.3d at 1008.

"An error is harmless if it does not affect a party's substantial rights." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016). Substantial rights are those "that affect the outcome of the case." *United States v. Turner*, 836 F.3d 849, 867 (7th Cir. 2016). Therefore, a district court's failure to acknowledge that it had the authority to hear a new argument—raised for the first time after a *Thompson* remand—is harmless if that new argument is meritless and could not have affected the outcome of the case.

Here, the district court alternatively considered Lewis's argument regarding the plea agreement and concluded that no

---

would have had to have addressed that argument. That is because Lewis would not have been able to raise this new or different argument at the first sentencing. But because all of the alleged breaches she complains about occurred at or before the first sentencing, and because she could have raised these arguments at that first sentencing and then on her first appeal, the district court was not obligated to hear these arguments on remand.

[2] We also recognize that the district court decided this case before our decision in *Mobley*, 833 F.3d 797, and thus could not have been aware of the specific acknowledgement requirement we announced in that case. Nonetheless, we find that this was an error.

breach occurred. When, as here, there is no dispute as to the relevant facts, we interpret the plea agreement and review whether there was a breach *de novo. United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016). "We interpret a plea agreement using ordinary principles of contract law, 'though with an eye to the special public-interest concerns that arise in this context.'" *Id.* (quoting *United States v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013)). Accordingly, we give unambiguous terms in the plea agreement their plain meaning and look to "the parties' reasonable expectations and construe ambiguities against the government as the drafter" only when the language is ambiguous. *Id.* Relief for a prosecutor's breach of a plea agreement is only actionable if the breach is substantial. *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014).

Lewis argues that the government breached the plea agreement in three major ways: (1) by advocating for additional enhancements in its email to the PSR preparer and its comments to the district court regarding the recommendations of the PSR; (2) by failing to advocate in good faith for a maximum sentence of ten years; and (3) by advocating for the 4-level vulnerable-victim enhancement rather than the 2-level enhancement contemplated in the PSR. Because none of these actions constitutes a breach of the plea agreement, we reject Lewis's argument.

First, the government did not breach the plea agreement by emailing the PSR preparer or commenting on the PSR's recommendations at sentencing. In fact, the government explicitly reserved the right to do so in the plea agreement. In the agreement, the government "reserve[d] the right to provide *the district court* and *the probation office* with any and all infor-

mation which might be pertinent to the sentencing process … ." (R. 17 at ¶ 22) (emphasis added). The government also "reserve[d] the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range … and any other matters not specifically addressed by this agreement." (R. 17 at ¶ 23.)

By offering its recommendations on the additional enhancements provided in the PSR, the government was not advocating for those enhancements. Instead, it was merely following the plea agreement's terms by providing the district court and the probation office with pertinent information that was not addressed in the agreement. Moreover, the government explicitly disclaimed advocacy for those additional enhancements at the sentencing hearing. When the district court asked the government for a recommendation about the additional enhancements in the PSR, the government first responded that it was not advocating for those enhancements. Only then did the government provide its recommendations.

Second, the government did not fail to advocate in good faith for a maximum sentence of ten years. The plea agreement bound the government to "recommend no more than 10 years['] imprisonment … ." (R. 17 at ¶ 24.) Lewis argues that once the district court accepted the higher sentencing range calculated in the PSR—121 to 151 months—the government had a duty to advocate for a below guidelines sentence. For Lewis, by continuing to describe her crime as "horrific," "egregious," "aggravated," "significant," "dramatic," and "tragic," the government failed to make such a good faith effort. We disagree.

As previously mentioned, the plea agreement required the government to argue for no more than ten years' imprisonment. That is precisely what the government did throughout the sentencing process. The government repeated its ten-year recommendation at the plea hearing, in its sentencing memorandum, and throughout the sentencing hearing. Strong advocacy in favor of the maximum sentence contemplated by a plea agreement does not constitute a breach, especially when the government reiterates its recommendation and the terms of the plea agreement throughout the sentencing process. *See United States v. Salazar*, 453 F.3d 911, 913–15 (7th Cir. 2006) (holding that the government did not breach the plea agreement when it described the defendant as a "cold-blooded killer" because the government "did not request a higher sentence" and "consistently commented that the low-end Guidelines sentence was appropriate").

Finally, the government did not breach the plea agreement by advocating for the 4-level vulnerable-victim enhancement at sentencing. First, the plea agreement, by its terms, permitted the government to argue for that increase. Moreover, the government made clear at sentencing that it was advocating for the 4-level enhancement "just to make the record complete." (R. 42 at 23.) The government did not breach the plea agreement by reminding the court of the agreement's terms and arguing in favor of those terms.

We agree with the district court's alternative conclusion that the government did not breach the plea agreement. Because this argument is meritless and could not have affected the outcome of Lewis's case, the district court's failure to acknowledge that it could have considered this argument is harmless.

*B. Sentencing Arguments*

Lewis's final two arguments involve her sentence. We review a district court's sentence in two steps. First, we review the district court's application of the sentencing guidelines for procedural error. *United States v. Mbaye*, 827 F.3d 617, 622 (7th Cir. 2016). "If the decision below is procedurally sound, then we ask whether the resulting sentence is substantively reasonable." *Id.* (quoting *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015)). Lewis makes one procedural challenge to her sentence: that the district court improperly applied the vulnerable-victim enhancement under U.S.S.G. § 3A1.1(b)(1). We begin with this decision and then turn to the issue of the substantive reasonableness of the sentence.

*1. Vulnerable-Victim Enhancement*

Lewis disputes the district court's application of the 2-level sentencing enhancement under U.S.S.G. § 3A1.1(b)(1) based on the vulnerability of her victims. "We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Guidry*, 817 F.3d 997, 1007–08 (7th Cir. 2016).

Under U.S.S.G. § 3A1.1(b)(1), a district court can increase a defendant's offense level by two levels "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The commentary for this section defines a "vulnerable victim" as a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2.

Lewis argues that age alone is insufficient to justify application of the enhancement under § 3A1.1(b)(1). In support of

her argument, Lewis quotes *United States v. Anderson*, 349 F.3d
568 (8th Cir. 2003). There, the Eighth Circuit held that "it
would be clear error to impose a § 3A1.1(b)(1) increase simply
because some of the victims of a widespread investment scam
were elderly." *Id.* at 572. For Lewis, because "the PSR preparer
and the judge relied entirely upon age, uncoupled with any
vulnerability that per se accompanies old age, to apply the en-
hancer," the enhancement was procedurally improper. (Ap-
pellant's Br. at 29).

As we have held, "Elderly victims satisfy the requirements
of § 3A1.1(b)(1), especially when their financial investments
and financial security are at issue. The elderly are a frequent
target of scammers and frequently qualify as vulnerable vic-
tims." *United States v. Iriri*, 825 F.3d 351, 352 (7th Cir. 2016) (in-
ternal citation and quotation marks omitted). But that doesn't
mean that the enhancement must always be applied when the
victim is elderly. Instead, like the Eighth Circuit, we have held
that "[t]here still must be some link between the vulnerability
and the characteristic in question, here age." *United States v.
Williams*, 258 F.3d 669, 673 (7th Cir. 2001). Thus, Lewis is cor-
rect that age alone can be insufficient to justify the application
of the vulnerable-victim enhancement. But because the dis-
trict court did not base the application of the enhancement
solely on the victims' ages, Lewis's argument ultimately fails.

Although the district court did base the application of the
vulnerable-victim enhancement at least in part on the victims'
ages, the court also looked to several other vulnerabilities that
Lewis exploited during the course of her scheme. As the dis-
trict court noted and the victim impact statements reflect,
Lewis had established long-term working relationships with

at least some of her victims before commencing her fraudulent scheme. As one victim's family member stated, Lewis "[p]os[ed] as a friend and advisor" and methodically did "things to develop trust over many years." (R. 21 at 47.) Lewis "waited until [her victim]'s advanced age, illness and memory losses after chemotherapy, along with [her victim's husband]'s progressive forgetfulness and weakness gave her the opportunity to steal their life savings—trying to get every penny of it." (R. 21 at 47.)

Other victims and their family members emphasized Lewis's knowledge that her victims lacked basic computer skills. Finally, as the district court noted at resentencing, at least one of Lewis's victims "was in the hospital with colon cancer when much of the money was taken away." (R. 77 at 21.) Lewis, who became acutely familiar with her victims by posing as a friend and advisor for years before and during her scheme, intentionally chose these people, not merely because of their ages but also because of their various other vulnerabilities she could readily exploit.

Lewis further argues that the district court conflated the vulnerable-victim enhancement with the abuse-of-trust enhancement and double counted the same conduct for purposes of sentencing. This argument, however, is easily dismissed. We have specifically held that this so-called "double counting," "in the sense that the same conduct is used more than once to increase a defendant's guideline range, is generally permissible unless the text of the guidelines prohibits it." *United States v. Burnett*, 805 F.3d 787, 794 (7th Cir. 2015). In *Burnett*, we specifically rejected the exact argument Lewis raises here—that the same conduct cannot be used to justify imposition of both the vulnerable-victim enhancement under

§ 3A1.1 and the abuse-of-trust enhancement under § 3B1.3. *Id.* The district court properly applied the vulnerable-victim enhancement.

### 2. Substantive Reasonableness of Lewis's Sentence

Lewis finally argues that her fifteen-year sentence, which is five years longer than the agreed-upon maximum sentence in her plea agreement and nearly five years longer than the upper end of her sentencing guidelines range, is substantively unreasonable. We review the substantive reasonableness of a district court's sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Fogle*, 825 F.3d 354, 358 (7th Cir. 2016).

There is no presumption that an above-guidelines sentence is unreasonable. *United States v. Gill*, 824 F.3d 653, 665 (7th Cir. 2016). We will uphold an above-guidelines sentence "so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *Id.* (quoting *United States v. Abebe*, 651 F.3d 653, 657 (7th Cir. 2011)). When reviewing the district court's reasoning, "we must determine whether the district court offered justification 'sufficiently compelling to support the degree of variance." *United States v. Bradley*, 675 F.3d 1021, 1025 (7th Cir. 2012) (quoting *United States v. Miller*, 601 F.3d 734, 739 (7th Cir. 2010)). In making this determination, we take into account that the "sentencing judge is in a superior position to find facts and judge their import under section 3553(a) in the individual case." *United States v. Carter*, 538 F.3d 784, 791 (7th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).

Here, the district court provided an adequate statement, consistent with 18 U.S.C. § 3553(a), explaining its reasons for

imposing an above-guidelines sentence. Before announcing its sentence, the district court reiterated the importance of the guidelines. It then considered the nature and circumstances of Lewis's offense. The district court concluded that Lewis's crime was "one of the most serious white collar crimes" it had ever seen. As such, the court rejected the "abstract mathematical calculation" of the guidelines because the guidelines didn't reflect the magnitude of Lewis's offense. (R. 77 at 45.)

Moreover, the district court considered the impact Lewis's crime had on her victims and the need to provide restitution to them. The court further considered "the need for just punishment" and determined that "deterrence played a huge role here because white collar crimes, unlike so many, … are not impulsive." (R. 77 at 47–48.) To send a message that this type of crime would not be tolerated, the district court chose to impose an above-guidelines sentence. Finally, in deciding on an appropriate sentence, the district court considered the need to protect the public.

Lewis argues that the district court failed to adequately consider certain mitigating factors including that she had a criminal history category of only I, that she was a nonviolent offender, and that she expressed genuine remorse at the sentencing hearing for her actions. A district court can consider all of these factors when conducting its § 3553 sentencing analysis; however, the district court has "discretion over how much weight to give a particular factor." *United States v. Boroczk*, 705 F.3d 616, 624 (7th Cir. 2013). The district court's weighing of the § 3553 factors must fall "within the bounds of reason," but "those bounds are wide." *Id.* (internal quotation marks omitted). Here, the district court considered these mitigating factors but decided that the magnitude of her offense

outweighed any mitigation and justified an above-guidelines sentence.

We agree with the district court that Lewis's crime was especially damaging to her victims and that the sheer magnitude of her offense coupled with the other § 3553 factors discussed by the district court justified an above-guidelines sentence. As such, the district court did not abuse its discretion.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM.