**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2018
Decided January 3, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2720

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:15-CR-30087-SMY-1 |
| LESLIE J. WOODS, *Defendant-Appellant*. | Staci M. Yandle, *Judge*. |

**O R D E R**

Leslie Woods played active roles in two violent armed robberies when he was a teenager. He entered into a plea agreement admitting to all charges but now contends that the government breached the agreement by not advocating for a sentence at the low end of the Guidelines range. But regardless whether a breach occurred, Woods failed to show that he would have received a lesser sentence had the prosecutor acted differently, so we affirm the judgment of the district court.

In the summer of 2010 when Woods was just 15 years old, he took part in two armed robberies that resulted in serious injuries to multiple victims. In the first robbery, Woods waited behind the wheel in a stolen car outside of the Best Shop in Cahokia,

Illinois, while three other men, armed and wearing masks, held up the store. They ordered a customer to the ground, and then two of the men went behind the counter, put both of their handguns to the lone clerk's head, and demanded all of the cash from the register. As they were leaving, one of the men shot the customer in the buttocks when he started to get up. Running out of the store, the shooter fired four shots toward the entrance, and a bullet struck the driver of a parked car in her back.

The second robbery also took place in Cahokia a few weeks later. Using a different stolen vehicle, Woods and the three others pulled up to a Mini-Mart. This time Woods joined the other men and all four entered the store armed and masked. Woods and two others went behind the counter and pointed their guns at the man and woman working the registers. Woods pressed the barrel of his rifle into the back of the male clerk, who was trying to open the register. The clerk suddenly turned around and grabbed the barrel of the gun, and Woods immediately shot him; the injured man fell atop the female clerk, who by now was huddled at Woods's feet. Woods shot the man twice more, then helped his associates haul away the entire cash register and what little money it contained.

Five years later, Woods and his partners in crime were finally identified and charged with multiple federal crimes related to these robberies. Woods was indicted on six counts and pleaded guilty to each of them pursuant to a plea agreement in which the government promised to "recommend a sentence at the low end of the Guideline range ultimately found by the Court."

At the sentencing hearing, the government made a robust presentation about Woods's dangerousness—a presentation that Woods believes breached his plea agreement. The prosecutor opened by stating that "consistent with the Plea Agreement, [the government] recommends a sentence of 23 years. That's 276 months."[1] But the prosecutor then made an extended argument (corresponding to six transcript pages) about the heinous nature of the robberies (describing them as "by far … the worst that we have seen"). She argued that "justice cannot be achieved unless the significance of

---

[1] The parties (and apparently the judge) assumed that Woods's Guidelines range was 276 to 287 months based on the judge's decision to grant the government's motion for a downward variance for his substantial assistance. *See* U.S.S.G. § 5K1.1. This assumption is wrong: section 5K1.1 does not change the range but instead merely allows the judge to vary the sentence downward. Woods's actual Guidelines range remained 512 to 535 months.

the sentence is in proportion to the magnitude of the crime, and the magnitude of these crimes cannot be overstated." In a closing line that Woods spotlights, the prosecutor characterized him as "an incredibly dangerous person from whom society needs to be protected for as long as possible."

The judge's sentencing remarks mirrored the prosecutor's statements about the severity of the crimes: "I don't think the seriousness of the crimes that you were involved in can be overstated. … [T]he seriousness, I don't know, again, how you can overstate it." She also emphasized Woods's criminal history, which includes two juvenile adjudications and three adult felonies—the adult crimes obviously occurring between the time of these robberies and Woods's arrest five years later. After considering Woods's age and the profound effect of his crimes on the victims, the judge concluded that "[t]here is an absolute need to protect the public from future crimes by this defendant." She imposed a sentence of 360 months in prison

Woods appeals, arguing that the government breached the plea agreement by only nominally recommending a sentence at the low end of the Guidelines while forcefully arguing for a longer one. Woods points to the government's introduction of extensive evidence at sentencing (including, for instance, surveillance videos and victim statements) as well as the prosecutor's statements about the need for a lengthy sentence (i.e., society needs to be protected from this "incredibly dangerous person" for "as long as possible"). The government responds that emphasizing the seriousness of the crimes was not a breach and in fact was required under its statutory obligation to bring all relevant information to the district court's attention. *See* 18 U.S.C. § 3661.

Assuming for the sake of argument that the government breached the plea agreement, the judge's remarks at sentencing do not support an inference that the breach was prejudicial. Woods did not object to the prosecutor's statements, so to prevail he must establish that his substantial rights were affected by the alleged breach. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). This in turn requires him to show that "but for the breach of the plea agreement[,] his sentence would have been different." *United States v. Salazar*, 453 F.3d 911, 915 (7th Cir. 2006) (quotation marks omitted).

Woods has not carried this burden. The judge carefully explained her reasoning and based Woods's sentence on her explicit assessment that the extremely violent nature of the offenses, combined with Woods's criminal record, warranted a 30-year prison term. The judge emphasized that the crimes involved multiple victims who were "terrified and terrorized" and that "some were shot over and over again"—one by

Woods himself. "There is no question," she said, "that a substantial sentence is warranted" to deter Woods from future criminal activity and to protect the public. Nothing in the record suggests that Woods would have received a lesser sentence but for the claimed breach of the plea agreement.

Woods also maintains that the 30-year sentence is substantively unreasonable. This argument too is meritless. We review the substantive reasonableness of the sentence deferentially and will reverse only if we find an abuse of discretion. *United States v. Lewis*, 842 F.3d 467, 477 (7th Cir. 2016). Woods argues that the judge overemphasized the seriousness of the crimes. The record does not bear that out. The judge considered the relevant aggravating and mitigating factors—not just the severity of the crimes but also Woods's age and criminal history—and explained why the risk he poses to public safety justifies a sentence of this significant length. We find no abuse of discretion.

AFFIRMED