In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1037

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALVIN WILKINSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-CR-00028-1 — **Sharon Johnson Coleman**, *Judge.*

_____

SUBMITTED JANUARY 15, 2021[*] — DECIDED JANUARY 25, 2021

_____

Before WOOD, HAMILTON, and ST. EVE, *Circuit Judges.*

---

[*] We had scheduled oral argument twice in this case. Defendant's counsel did not appear for either argument. On the first date, November 12, 2020, we heard an abbreviated argument from the government. Upon further consideration, we have concluded that the briefs presented the issues adequately and the decisional process would not be significantly aided by oral argument. See Fed. R. App. P. 34(a)(2)(C).

HAMILTON, *Circuit Judge*. Hedge-fund manager Alvin Wilkinson operated a Ponzi scheme to hide from his investors the truth that he had lost most of their money in the 2008 financial crisis. The scheme was eventually uncovered and halted in 2016 when the Commodity Futures Trading Commission (CFTC) filed a civil enforcement action against Wilkinson and his funds. In early 2017, Wilkinson was charged by federal indictment with mail and wire fraud. He pleaded guilty to one count of wire fraud. The government dropped the other charges.

At sentencing, the district court applied a four-level sentencing guideline enhancement under U.S.S.G. § 2B1.1(b)(20) because it found that Wilkinson's offense qualified as "a violation of commodities law" by a "commodity pool operator." Wilkinson argues on appeal that the court erred in applying this enhancement because he was not a "commodity pool operator" as that term is defined in the Commodity Exchange Act. We affirm. Wilkinson's plea agreement and presentence investigation report provided facts showing that Wilkinson was a commodity pool operator.

I. *Factual and Procedural Background*

From 1999 to 2016, appellant Alvin Wilkinson convinced approximately 30 friends, family members, and colleagues to invest about $13.5 million in two hedge funds that he created and managed, Wilkinson Financial Opportunity Fund (WFOF) and Chicago Index Partners (CIP). By 2008, Wilkinson had lost the vast majority of his investors' money. To conceal these losses, Wilkinson told his investors that the funds' assets included a $12 million note with an Australian hedge fund named Pengana. The "Pengana Note" did not actually exist. From 2008 to 2015, Wilkinson tricked his investors

into believing this lie by providing fraudulent K-1 federal income tax forms showing that their investments were increasing in value from interest payments on the imaginary Pengana Note. Nevertheless, some investors became suspicious and demanded that Wilkinson return their investments.

To pay back these suspicious investors, Wilkinson defrauded still more investors. From 2011 to 2015, he solicited about $3 million from new investors using private placement memoranda (PPMs) falsely saying that Wilkinson intended to use their investments "to trade a variety of stock indexes and options, futures, and options on futures on such stock indexes on a variety of national securities and futures exchanges." This series of fraudulent investments included the specific instance of wire fraud alleged in Count 1, to which Wilkinson pleaded guilty. Wilkinson's plea declaration admitted the following for Count 1:

> On or about March 19, 2014, I did execute the scheme by knowingly causing the transmission of an interstate wire transfer of $115,000 from Investor A's account … . Investor A made the investment in CIP via the wire transfer based upon the representations set forth in the CIP PPM, which Investor A had received prior to making his investment, and based upon my representations that I, as the general partner of CIP, would use Investor A's investment to pursue the options trading strategies described in the CIP PPM, when I well knew that I was not going to use Investors' funds to pursue any options trading strategy.

Wilkinson actually intended to use these new funds to make Ponzi payments to his original investors. Wilkinson also used investor funds to pay for personal expenses, including mortgage and rent payments on his properties.

In June 2016, the CFTC filed a civil enforcement action against Wilkinson seeking injunctive relief, disgorgement, and other civil penalties. On November 22, 2016, Judge Kendall entered a default judgment against Wilkinson concluding, among other things, that his actions constituted fraud by a commodity pool operator in violation of 7 U.S.C. § 6*o*(1). See *CFTC v. Wilkinson*, No. 16-CV-6734, 2016 WL 8256406, at *5 (N.D. Ill. Nov. 22, 2016).

In January 2017, Wilkinson was charged with mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. In 2019, he reached a plea agreement. He pleaded guilty to one count of wire fraud; the government dismissed the other charges. As noted, his written plea declaration admitted that he sent investors fraudulent K-1 tax forms and induced an investment of $115,000 using fraudulent PPMs. Wilkinson did not object to any of the factual information in his presentence investigation report, which further detailed his offenses.

At sentencing, the district court calculated Wilkinson's guideline range using § 2B1.1 of the Sentencing Guidelines. The court started with a base offense level of 7 and then added several enhancements, including a four-level enhancement because the offense "involved … a violation of commodities law and, at the time of the offense, the defendant was … a commodity pool operator." U.S.S.G. § 2B1.1(b)(20)(B).

Wilkinson objected to this enhancement, arguing that he did not qualify as a commodity pool operator. His theory was

that he traded only broad-based indexes like S&P 500 futures, which fit the Commodity Exchange Act's definition of an "excluded commodity" because such broad-based indexes are "not based … on the value of a narrow group of commodities." See 7 U.S.C. § 1a(19) (defining "excluded commodity" under Commodity Exchange Act).

The district court (Judge Coleman) was not persuaded. The judge applied the enhancement, citing the factual basis for Wilkinson's plea, Judge Kendall's handling of the same issue in the civil enforcement action, and the arguments at sentencing. Wilkinson appeals the district court's application of the enhancement. The district judge did not give any signal that this rather technical issue under the Sentencing Guidelines would not affect the ultimate sentence under 18 U.S.C. § 3553(a), so we address the merits of the guideline issue.

II. *Analysis*

"We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Lewis*, 842 F.3d 467, 476 (7th Cir. 2016), quoting *United States v. Guidry*, 817 F.3d 997, 1007–08 (7th Cir. 2016). Section 2B1.1(b)(20) of the Sentencing Guidelines states in relevant part:

> If the offense involved—(A) a violation of securities law and, at the time of the offense, the defendant was … (iii) an investment adviser, or a person associated with an investment adviser; or (B) a violation of commodities law and, at the time of the offense, the defendant was … (ii) a commodities trading advisor; or (iii) a commodity pool operator, increase by 4 levels.

The enhancement applies if Wilkinson (1) violated commodities law as a commodity pool operator, (2) violated commodities law as a commodities trading advisor, or (3) violated securities law as an investment advisor. We agree with the district court that Wilkinson qualifies for the enhancement as a commodity pool operator. We need not reach the government's alternative arguments under the second and third possibilities.

A.  *Wilkinson Qualified as a Commodity Pool Operator*

The commentary to § 2B1.1(b)(20) instructs that the term "commodity pool operator" uses the definition in the Commodity Exchange Act and that a violation of "commodities law" includes a violation of the Commodity Exchange Act (7 U.S.C. § 1 et seq.). See U.S.S.G. § 2B1.1 cmt. n.16(A). Under the Commodity Exchange Act, a "commodity pool operator" is defined to include "any person—(i) engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property … *for the purpose of trading in commodity interests, including any*—(I) commodity for future delivery, *security futures product*, or swap … ." 7 U.S.C. § 1a(11)(A) (emphasis added). The Act, in turn, defines a "security futures product" as "a security future or any put, call, straddle, option, or privilege on any security future." § 1a(45).

Under these definitions, Wilkinson qualified as a commodity pool operator if he solicited investment funds "for the purpose of trading in … any … security futures product." § 1a(11)(A). The private placement memoranda that Wilkinson used to solicit investors show that he did exactly that. Although the 1999 Limited Partnership Agreement for the

Wilkinson Financial Opportunity Fund claimed that "the Partnership does not presently intend to operate as a commodity pool," elsewhere the private placement memoranda repeatedly made clear that the funds intended to trade in futures products that would bring Wilkinson under the definition of a commodity pool operator. The private placement memoranda said that the funds intended to "trade a variety of stock indexes and options, *futures, and options on futures* on such stock indexes." They also said: "The Partnership is authorized to act as an investor or trader in … futures and options thereon." And they listed S&P 500 futures as a specific futures product that could be traded, and that could possibly "cause [the Wilkinson Financial Opportunity Fund] to become a Commodity Pool."[1]

These documents provide sufficient evidence that the fraudulent funds were operated, at least in part, "for the purpose of trading in … any … security futures product." 7 U.S.C. § 1a(11)(A). That is enough for Wilkinson to qualify as a commodity pool operator under the Guidelines. Cf. *United States v. Ramunno*, 289 F. App'x 359, 361 (11th Cir. 2008) (finding that defendant was a commodity pool operator under § 2B1.1(b)(20) based on "uncontested factual findings that [the defendant] (a) solicited money from investors by holding himself out as a successful commodities trader, (b) accepted money from investors, (c) advised investors in the merits of

---

[1] Wilkinson does not object to the accuracy of these documents, which were exhibits to his presentence report, so the district court could rely upon them at sentencing. See Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court … may accept any undisputed portion of the presentence report as a finding of fact.").

trading in commodities, and (d) issued earning reports to investors.").

To avoid this conclusion, Wilkinson relies on the Commodity Exchange Act's definition of an "excluded commodity" in 7 U.S.C. § 1a(19), focusing on the exclusion for futures indexes that are "not based in substantial part on the value of a narrow group of commodities." He argues that he sold only broad-based futures products that the Act defines as "excluded commodities."[2]

---

[2] Here is the full definition in 7 U.S.C. § 1a(19):

The term "excluded commodity" means--

(i) an interest rate, exchange rate, currency, security, security index, credit risk or measure, debt or equity instrument, index or measure of inflation, or other macroeconomic index or measure;

(ii) any other rate, differential, index, or measure of economic or commercial risk, return, or value that is--

(I) not based in substantial part on the value of a narrow group of commodities not described in clause (i); or

(II) based solely on one or more commodities that have no cash market;

(iii) any economic or commercial index based on prices, rates, values, or levels that are not within the control of any party to the relevant contract, agreement, or transaction; or

(iv) an occurrence, extent of an occurrence, or contingency (other than a change in the price, rate, value, or level of a commodity not described in clause (i)) that is--

(I) beyond the control of the parties to the relevant contract, agreement, or transaction; and

(II) associated with a financial, commercial, or economic consequence.

Wilkinson's reliance on this definition is misplaced. Under the Act, "excluded commodity" is a specialized term that makes only three appearances in the entire Act. None of them relate to the Act's fraud provision or its definition of a commodity pool operator, which are the provisions upon which Wilkinson's enhancement actually turns. See 7 U.S.C. § 7a-2(c)(5)(C)(i) ("excluded commodities" relevant to "[s]pecial rule for review and approval of event contracts and swaps contracts"); 7 U.S.C. § 2(c)(1)(F) & (c)(2)(A)(i) (removing CFTC jurisdiction over "repurchase transactions in an excluded commodity" only if they are not "contract[s] of sale of a commodity for future delivery (or an option on such a contract) … that is executed or traded on an organized exchange"); 7 U.S.C. § 6a(a)(2)(A) ("[W]ith respect to physical commodities other than excluded commodities …, the Commission shall … establish limits on the amount of positions … that may be held … .").

Broad-based futures indexes are thus "excluded commodities" only for purposes of this handful of statutory requirements. Broad indexes remain "commodities" under the Act as a whole, including its fraud provisions and the definition of a commodity pool operator. Wilkinson has not cited any authority holding or even suggesting that the term "excluded commodity" limits the definition of a "commodity pool operator." Rather, the Act explicitly defines "commodity pool operator" to include people who solicit funds to trade "any … security futures product"—even broad-based futures products that qualify as "excluded commodities" for other purposes in other statutory contexts. 7 U.S.C. § 1a(11)(A).

Wilkinson also claims he did not actually trade the commodities that the private placement memoranda said would

be traded. Given what he said in soliciting investments, it does not matter whether he actually traded those commodities. The definition of a commodity pool operator hinges on whether the person "solicits … funds … *for the purpose* of trading in commodity interests." 7 U.S.C. § 1a(11)(A) (emphasis added). Actual trading of futures is not required. See *CFTC v. Equity Fin. Grp. LLC*, 572 F.3d 150, 158 (3d Cir. 2009) (holding that "the actual trading of commodity futures is not required" for a person to be deemed a commodity pool operator).

Finally, Wilkinson argues that Judge Coleman gave improper collateral estoppel effect to Judge Kendall's previous finding in the CFTC's civil enforcement action that he qualified as a commodity pool operator. As we read the sentencing transcript, Judge Coleman did not give collateral estoppel effect to that finding but reached her own finding on the issue. Judge Coleman said that the civil case was persuasive, but she also clarified that there was evidence "even in the … factual basis for the plea" and "also based on arguments here" that Wilkinson was a commodity pool operator. This portion of the transcript shows that Judge Coleman did not give estoppel effect to Judge Kendall's findings.

We therefore agree with the district court that, for purposes of applying the § 2B1.1(b)(20) guideline enhancement, Wilkinson qualified as a commodity pool operator as defined by the Commodity Exchange Act.

B. *Wilkinson Violated Commodities Law*

Because the § 2B1.1(b)(20) enhancement applies "if the offense involved … a violation of commodities law and, at the time of the offense, the defendant was … a commodity pool

operator," the remaining question is whether Wilkinson's offense violated the Commodity Exchange Act. There seems to be no dispute on this issue. The Act provides:

> It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator … to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or … to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6*o*(1). To apply the enhancement, a defendant need not have been convicted of violating § 6*o*(1). The sentencing court need only conclude that his conduct violated § 6*o*(1). See U.S.S.G. § 2B1.1 cmt. 16(B) ("A conviction under a securities law or commodities law is not required in order for subsection (b)(20) to apply. This subsection would apply in the case of a defendant convicted under a general fraud statute if the defendant's conduct violated a securities law or commodities law.").

The district court correctly concluded that Wilkinson's scheme to defraud investors violated 7 U.S.C. § 6*o*(1) of the Commodity Exchange Act. Wilkinson admitted in his plea declaration to sending fraudulent tax documents to cover up losses and to using fraudulent private placement memoranda to secure new investments. These actions clearly constitute a "scheme" or "practice" to defraud clients or prospective clients under § 6*o*(1). Because Wilkinson violated § 6*o*(1) as a

commodity pool operator, he qualified for the enhancement. We need not reach the government's alternative grounds for affirmance, which the district court did not reach.

The district court's judgment is AFFIRMED.