PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GIUSEPPE PILEGGI,

*Defendant-Appellant.*

No. 10-5273

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert J. Conrad, Jr., Chief District Judge.
(3:06-cr-00151-RJC-1)

Argued: December 7, 2012

Decided: January 2, 2013

Before TRAXLER, Chief Judge, and GREGORY and
DAVIS, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published
opinion. Judge Davis wrote the opinion, in which Judge
Gregory joined. Chief Judge Traxler wrote an opinion concur-
ring in the result.

---

**COUNSEL**

**ARGUED:** Rudolph Alexander Ashton, III, MCCOTTER, ASHTON & SMITH, PA, New Bern, North Carolina, for Appellant. Daniel Steven Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Acting Deputy Assistant Attorney General, Ellen R. Meltzer, Patrick M. Donley, Fraud Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

DAVIS, Circuit Judge:

Giuseppe Pileggi appeals the restitution order that the district court entered after we remanded his case for resentencing. We previously held that the district court erred when it sentenced Pileggi to 600 months (50 years) of imprisonment. Specifically, we held that the court relied on an erroneous view of the facts concerning the diplomatic assurances given to Costa Rica when Pileggi was extradited to the United States to face charges arising from his participation in a fraudulent sweepstakes scheme. *United States v. Pileggi*, 361 F. App'x 475, 477–79 (4th Cir. 2010). In this second appeal, Pileggi contends that the district court lacked authority to reconsider the amount of restitution on remand. We agree. We therefore vacate the restitution order and remand with instructions to the district court to reinstate the previous restitution order directing Pileggi to make restitution in the amount of $4,274,078.40.[1]

---

[1]Pileggi also contends that the district court abused its discretion in refusing his request for a new presentence report ("PSR") before his resentencing. We conclude that the court did not abuse its discretion. *See United States v. Sexton*, 512 F.3d 326, 333 (6th Cir. 2008) ("it is unnecessary to prepare new PSRs on remand where the parties receive an opportunity to be heard and no new information exists that would warrant an update").

I.

A.

From April 2003 until May 2006, Pileggi, a Canadian citizen, and more than four dozen co-conspirators ran an elaborate fraudulent sweepstakes scheme out of Costa Rica that primarily targeted elderly United States citizens. Costa Rican authorities extradited Pileggi after the United States agreed that Pileggi "[would] not receive a penalty of death or one that requires that he spend the rest of his natural life in prison." *Pileggi*, 361 F. App'x at 476. Pileggi was tried in the Western District of North Carolina and convicted of the following offenses: one count of conspiracy to commit wire fraud, mail fraud, and travel fraud, in violation of 18 U.S.C. § 371, and 22 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.

At sentencing, the prosecutor stated that the United States had promised Costa Rica it would "not seek a sentence in excess of 50 years." *Pileggi*, 361 F. App'x at 476. The court sentenced Pileggi, then 48, to 600 months (50 years) in prison, followed by three years of supervised release. The court also ordered Pileggi to pay restitution of $3,952,985[2] and to forfeit $8,381,962 to the United States.

Pileggi appealed the 600-month prison term, arguing that the district court had relied on "clearly erroneous facts to arrive at the sentence, namely the [g]overnment's misrepresentation concerning the diplomatic assurances given to Costa Rica to secure [his] extradition." *Pileggi*, 361 F. App'x at 477–78. Pileggi did not appeal the restitution order, and the government did not file a cross-appeal.

---

[2]On December 29, 2008, the court increased the restitution amount to $4,274,078.40.

We held that the district court had committed a significant procedural error by imposing "a de facto life sentence" in reliance on "clearly erroneous facts": the government's "indisputably false information" about its agreement with Costa Rica. *Pileggi*, 361 F. App'x at 477–79. Thus, we vacated "Pileggi's 600-month sentence and remand[ed] with instructions that the case be reassigned for resentencing." *Id.* at 479. Our mandate stated that "the judgment of the District Court [was] vacated," and remanded the case only for "further proceedings consistent with [our] decision."[3]

### B.

At Pileggi's resentencing in September 2010, the district court imposed a sentence of 300 months (25 years) and ordered Pileggi to pay restitution of $4,274,078.40.

The government then asked to address the amount of restitution, noting that, in another case involving the same fraudulent sweepstakes operation in Costa Rica, this Court had found that "losses for restitution purposes had to be attributed to the individual rooms," or call centers, where each defendant had worked. J.A. 186. (citing *United States v. Llamas*, 599 F.3d 381 (4th Cir. 2010)). The government argued that the $4.2 million figure in Pileggi's case was "tainted" because the trial judge had chosen to "group [the rooms] all together"; although the government "[did]n't mind the $4.2 million figure," it argued that Pileggi would likely contend on appeal that he had been wrongly held responsible for losses from other rooms. *Id.* at 187–88. The government thus asked the court to use the forfeiture amount—about $8.3 million—as the restitution figure, even though the government had "gone back" and done "another analysis which show[ed] that the loss is even higher." *Id.* at 187–89.

---

[3]*See* Judgment, Docket No. 81-1 (vacating the district court judgment and remanding for further proceedings) and Mandate, Docket No. 83 (giving effect to the Court's judgment).

The district court decided to limit restitution to the $4.2 million figure, but agreed to "hold that restitution component open" and allow the government to "file its amended figures" within 30 days. *Id.* at 190.

At a second hearing focused solely on restitution, the government argued that the $8.3 million forfeiture figure had resulted from a "two-generation" analysis of wire transfer records that had been done "as speedily as possible." J.A. 202. Upon remand, the government had applied a "five-generation analysis" to the same records, which had "increased the restitution amount from [$]8.3 [million] to about some [$]20 million." *Id.* The government asserted that "[t]his analysis was done specifically in response to *Llamas*." *Id.* at 252.

The district court rejected Pileggi's argument that it lacked authority to reconsider the restitution amount, reasoning that "the issue . . . was ripe for adjudication in light of the *Llamas* case." J.A. 200, 205, 256. After hearing the testimony of the government's analyst, *id.* at 205–48, the court increased the restitution amount to $20,726,005.18, *id.* at 256.

## II.

### A.

Pileggi argues that the district court lacked authority to change the restitution amount, because our mandate remanded the case only to correct "the prison sentence [that] was in violation of the extradition agreement"; "the restitution amount was not addressed on [his] direct appeal," and the government did not "file a cross-appeal claiming that the restitution amount was too low." Opening Br. 16.

"We review de novo the district court's interpretation of the mandate." *United States v. Susi*, 674 F.3d 278, 283 (4th Cir. 2012).

"Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is controlling as to matters within its compass." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (internal quotation marks omitted). "Because this mandate rule is merely a specific application of the law of the case doctrine, in the absence of exceptional circumstances, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.*, *quoted in Susi*, 674 F.3d at 283.

"[T]o the extent that the mandate of the appellate court instructs or permits reconsideration of sentencing issues on remand, the district court may consider the issue de novo, entertaining any relevant evidence on that issue that it could have heard at the first hearing." *Bell*, 5 F.3d at 67 (internal quotation marks omitted), *quoted in Susi*, 674 F.3d at 283. But the mandate rule "forecloses litigation of issues . . . *foregone on appeal or otherwise waived*, for example because they were not raised in the district court."[4]

> [W]hen this court remands for further proceedings, a district court must, except in rare circumstances, implement both the letter and spirit of the . . . mandate, taking into account [our] opinion and the circumstances it embraces.

---

[4]*Bell*, 5 F.3d at 67 (emphasis added), *quoted in Susi*, 674 F.3d at 283. *Accord Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) ("any issue that could have been but was not raised on appeal is waived and thus not remanded"); *S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) ("[u]nder the mandate rule, a district court cannot reconsider issues the parties failed to raise on appeal"); *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011) (noting that, when an appellate court "remands to correct a discrete, particular error that can be corrected . . . . without . . . a redetermination of other issues, the district court is limited to correcting that error"; "any issue that could have been raised on appeal but was not is waived and, therefore, not remanded").

*Id. Accord S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) ("the court must attempt to implement the spirit of the mandate").

We unhesitatingly conclude that the mandate rule barred the district court from reconsidering the restitution order on remand. Neither party had raised the issue before this Court, and the government is not permitted to "use the accident of a remand to raise . . . an issue that [it] could just as well have raised in the first appeal."[5] Although we "remand[ed] with instructions that the case be reassigned for resentencing," we vacated only "Pileggi's 600-month sentence." *Pileggi*, 361 F. App'x at 479. Thus, the opinion limited the district court to correcting only the incarceration term of Pileggi's sentence. *See Bell*, 5 F.3d at 67.

The Supreme Court's recent decision in *Pepper v. United States*, 131 S. Ct. 1229 (2011), does not counsel otherwise. In *Pepper*, the Supreme Court rejected the contention that the "law of the case" required a new judge, on remand, to adhere to the prior sentencing judge's downward departure from the advisory guidelines sentence. *Pepper*, 131 S. Ct. at 1251. The *Pepper* Court reasoned that "an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* at 1251 (internal quotation marks omitted). Because the appellate court had "set aside [the defendant's] *entire sentence* and remanded for a de novo resentencing," the remand order had "effectively wiped the slate clean." *Id.* (emphasis added).

---

[5]*United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) (dismissing the defendant's second appeal because "[t]he sentencing issues that [he] wishe[d] to raise . . . [had] not [been] affected by the error . . . that had necessitated the remand"; "[o]nly an issue arising out of the correction of the sentence ordered by [the] court could [have] be[en] raised in a subsequent appeal").

Here, by contrast, we vacated only Pileggi's 600-month term, not his entire sentence.[6] Moreover, *Pepper* does not "abolish waiver in the context of re-sentencing."[7] The government waived any challenge to the amount of restitution by failing to raise it on appeal.[8] Because the mandate rule "forecloses litigation of issues . . . foregone on appeal," *Bell*, 5 F.3d at 67, the district court was prohibited from revisiting restitution on remand.[9]

---

[6]*Pileggi*, 361 F. App'x at 479. Although our mandate broadly stated that "the judgment of the District Court [was] vacated," it remanded the case only for "proceedings consistent with [our] decision." *See* Docket Nos. 81-1, 83. Vacating the restitution order was not consistent with our decision, which addressed only the propriety of Pileggi's prison term and vacated only that aspect of his sentence.

[7]*United States v. Barnes*, 660 F.3d 1000, 1007 (7th Cir. 2011) (holding that, "when a case is generally remanded to the district court for re-sentencing, the district court may entertain new arguments as necessary to effectuate its sentencing intent, but it is not obligated to consider any new evidence or arguments beyond that relevant to the issues raised on appeal"), *quoted in Susi*, 674 F.3d at 285 (finding no "requirement that district courts disregard a prior waiver and entertain new evidence and arguments where such is not necessary to effectuate the court's sentencing intent").

[8]*See United States v. Rendelman*, 641 F.3d 36, 42 n.7 (4th Cir. 2011) (finding that a party had abandoned an argument by not pursuing it on appeal).

[9]In *Susi*, we referred to a district court's "*discretion* to decline to consider waived arguments on remand," *Susi*, 674 F.3d at 284–84 (emphasis added), but *Susi* is distinguishable. In *Susi*, which also involved a fraudulent sweepstakes scheme in Costa Rica, we "vacated [the defendant's] sentence, including the order of restitution, and remanded the case for resentencing consistent with the opinion." *Id.* at 280. "In the initial sentencing, the district court [had] erred in considering as a basis for Susi's sentence that the conspiracy entailed sixteen call centers instead of just the one where Susi worked, and in attributing a $4.2 million loss from all the call centers to him instead of an amount limited to the one call center." *Id.* at 283. But because we "vacat[ed] the sentence in its entirety," *id.*, the district court was free to "reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *see Pepper*, 131 S. Ct. at 1251. Nonetheless, we noted that "[n]othing in *Pepper* . . . require[d] the district

The government's citation to *United States v. Fields*, 552 F.3d 401 (4th Cir. 2009), is equally unavailing. *See* Gov't Br. 34–35. In *Fields*, the district court initially sentenced the defendant to 12 months in prison and a $2,000 fine under the 2000 advisory sentencing guidelines; we vacated the entire sentence and remanded, ordering the district court to resentence the defendant under the 2006 advisory sentencing guidelines. *Fields*, 552 at 403. At resentencing, the district court still imposed a 12-month term, but waived the fine. *Id.* On the second appeal, we rejected the government's contention that the mandate rule had precluded the lower court from reconsidering imposition of the fine. *Id.* at 403–04. We emphasized that the defendant had "framed the issue on [the first] appeal broadly"—whether the district court had erred "when it used the 2000 version of the United States Sentencing Guidelines to compute the guideline sentence rather than the less punitive present 2006 version"—and the Court had "not limit[ed] [its] remand order to a specific issue" beyond the applicable guidelines manual. *Id.* at 404.

---

court to reconsider every component of the sentencing decision during resentencing." *Susi*, 674 F.3d at 284.

> [A] district court would be well within its authority to decline to revisit every sentencing issue on remand, unless the mandate indicates otherwise or the interrelationship of sentencing components makes it advisable to do so. There is no reason to require a district court to plow through the same arguments, take the same evidence, and make the same findings that it has already made in the original sentencing where such an effort would serve no purpose.

*Id.* at 286. Because "[t]he error requiring [Susi's] resentencing was unrelated to the Sentencing Guidelines calculation," we did not resolve his claim that "the district court [had] erred in concluding that it was barred from reconsidering the Sentencing Guidelines calculation" on remand; instead, we found that any such error was harmless. *Id.* at 283, 285. Notably, the government in *Susi* argued that the remand "was limited to the issues of restitution and the § 3553(a) analysis"—even though we had vacated Susi's entire sentence. *Id.* at 283.

Here, by contrast, Pileggi's first appeal framed the issue narrowly: whether the district court had relied on "clearly erroneous facts to arrive at the sentence, namely the [g]overnment's misrepresentation concerning the diplomatic assurances given to Costa Rica to secure Pileggi's extradition." *Pileggi*, 361 F. App'x at 477–78. Our opinion focused only on this issue, and we vacated only that portion of the sentence that had imposed the 600-month term.[10]

In sum, our mandate barred the district court from reconsidering the amount of restitution on remand.

## B.

"Even though the mandate of an appellate court may not contemplate resurrecting an issue on remand, the trial court may still possess some limited discretion to reopen the issue in very special situations." *Bell*, 5 F.3d at 67 (internal quotation marks omitted).

> These circumstances are: (1) a showing that controlling legal authority has changed dramatically; (2) that significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; or (3) that a blatant error in the prior decision will, if uncorrected, result in a serious injustice.

*Id.* (internal quotation marks and alterations omitted). "The litany of exceptional circumstances sufficient to sidetrack the [mandate rule] is not only short, but narrowly cabined." *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991) (collecting cases).

The government argues that a blatant error in the district

---

[10]*Compare Pileggi*, 361 F. App'x at 479 ("we vacate Pileggi's 600-month sentence and remand with instructions that the case be reassigned for resentencing") (emphasis added), *with Fields*, 552 F.3d at 403 ("[w]e vacate the sentence and remand this case for resentencing").

court's original restitution calculation, if uncorrected, will "result in a serious injustice to the victims of Pileggi's conspiracy fraud conviction and . . . run counter to the Mandatory Victim Restitution Act ('MVRA')." Gov't Br. 35–36. The government also contends that *Llamas*, issued after Pileggi's original sentencing and appeal, supports the district court's reconsideration of restitution on remand. *See id.* at 15, 45–47.

Neither argument is persuasive.

First, *Llamas* was not a dramatic change in controlling legal authority that warrants a departure from the mandate rule. *See Bell*, 5 F.3d at 67. In *Llamas*, the defendant "challenge[d] the district court's restitution order of more than \$4.2 million, contending that the court [had] erred in finding him jointly and severally liable for losses caused by other Costa Rican fraud schemes." *Llamas*, 599 F.3d at 390. *The government conceded the error*, *id.*, and we relied on our 2003 decision in *United States v. Newsome*, 322 F.3d 328 (4th Cir. 2003), to conclude that the district court had abused its discretion in ordering Llamas to compensate for losses not attributable to his offense. *Id.* at 391. We reasoned that,

> [b]ecause the MVRA focuses on the offense of conviction rather than on relevant conduct, "the focus of [a sentencing] court in applying the MVRA must be on the losses to the victim *caused by the offense*." *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003).

*Id.* at 390–91 (emphasis and alteration in original). Our decision in *Llamas* was "thus not a dramatic change in legal authority, but simply an application" of the MVRA's plain language as interpreted by our earlier decision in *Newsome*. *See Doe v. Chao*, 511 F.3d 461, 467 (4th Cir. 2007).

Second, we are not persuaded that the original restitution order results in serious injustice. Importantly, the government

has not shown good cause for its failure to move for an amended restitution order before Pileggi's resentencing. Under 18 U.S.C. § 3664, which governs the issuance and enforcement of restitution orders, the government generally has until 90 days after sentencing to ascertain the amount of victims' losses. *See* 18 U.S.C. § 3664(d)(5). If a victim's losses are not finally determined by that time but a victim subsequently discovers losses, the victim may petition the court for an amended restitution order. *Id.* But such an order "may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief." *Id.* Here, the government simply reanalyzed the information that it had already collected—the wire transfer records—which it could have done before Pileggi's first sentencing.

The government's citation to *Dolan v. United States*, 131 S. Ct. 2533 (2010), is unavailing. In *Dolan*, the Court held that a district court retained the power to order restitution, even after expiration of the 90-day post-sentencing period, when it had made clear prior to the deadline that it intended to impose restitution. *Dolan*, 130 S. Ct. at 2537. But the case is distinguishable. In *Dolan*, the district court had held open the restitution order at sentencing because there was "insufficient information . . . regarding possible restitution payments that may be owed"; 67 days later, the probation office prepared an addendum to the PSR, recommending a total amount of restitution. *Id.* Despite this information, the defendant did not request a hearing, and the court did not hold a hearing until about three months after the 90-day deadline had expired. *Id.*

Here, by contrast, the original sentencing court made a final determination of the amount of Pileggi's restitution at the September 24, 2008, sentencing. The court did not find "insufficient information" to determine the amount. *See Dolan*, 130 S. Ct. at 2537. Although the district court increased the amount by about $321,000 in December 2008, it was not until

about two years later that the government proposed a five-fold increase in restitution.[11] The request came suddenly—during the resentencing hearing—not in an addendum to the PSR that would have provided Pileggi some notice. *See Dolan*, 130 S. Ct. at 2541 ("the defendant normally can mitigate any harm that a missed deadline might cause—at least if, as here, he obtains the relevant information regarding the restitution amount before the 90–day deadline expires"). Moreover, the government's request was based not on new information brought forth by victims but merely on a more detailed analysis of the same information that the government possessed at the original sentencing.

Although we are sympathetic to the reality that many of Pileggi's victims will not be made whole, we cannot, on the facts presented, conclude that this misfortune stemmed from a blatant error in the district court's original calculation of restitution. Rather, it resulted from the government's unexplained failure to comply with the dictates of § 3664. This failure falls short of the serious injustice required to depart from the mandate rule. *Cf. United States v. Becerra*, 155 F.3d 740, 755 (5th Cir. 1998) ("the government cites no case where our court (or any court, for that matter) has found that a prior opinion works a manifest injustice where the party claiming injustice had all the means and incentive to provide the relevant information in the first appeal"), abrogated on other grounds, as recognized in *United States v. Farias*, 481 F.3d 289, 291 (5th Cir. 2007).

Because relitigation of the issue of restitution was fore-

---

[11]The government contends that some of the delay was "the result of Pileggi's successful appeal." *See* Gov't Br. 37. Assuming that is true, it does not militate against enforcing the mandate rule. To so casually excuse the government's failure to raise restitution in a cross-appeal would effectively penalize Pileggi for exercising his appellate rights, simply because the appeal "shaved 25 years off [his] prison term" and "made it more likely that some meaningful restitution would be paid to [his] victims." *Id.*

closed in this case, the district court erred when it increased the amount of restitution on remand.[12]

### III.

For the reasons set forth, we vacate the restitution order and remand with instructions to the district court to reinstate the previous restitution order directing Pileggi to make restitution in the amount of $4,274,078.40.

> *AFFIRMED IN PART,*
> *VACATED IN PART,*
> *AND REMANDED*

TRAXLER, Chief Judge, concurring in the result:

I concur in the result reached in this case. In cases involving a general remand, the resentencing is *de novo*, and the district court is entitled (but not required) to reconsider any and all issues relevant to sentencing, whether or not the issues were raised in the first appeal. *See United States v. Susi*, 674 F.3d 278, 284-86 (4th Cir. 2012); *see also Pepper v. United States*, 131 S. Ct. 1229, 1250-51 (2011) (noting that general remands for resentencing place no restrictions on district court's discretion at resentencing).

The remand for resentencing in this case, however, was a limited remand that restricted the district court to reconsideration of the term of imprisonment only. *See, e.g.*, *United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993) (remand limited to consideration of specific issue). The mandate rule therefore precluded the district court from reviving the restitution issue foregone by both parties in the original appeal. *See id.* at 66.

---

[12]Because we find that the district court lacked the authority to reconsider the amount of restitution, we do not address Pileggi's alternative argument that the evidence does not support a restitution amount of more than $20 million.

While there are exceptions to the mandate rule, *see id.* at 67, none of those exceptions are applicable to this case so as to permit the district court to change the amount of restitution.