RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee,*

    *v.*

RADU MICLAUS,

                    *Defendant-Appellant.*

> No. 23-3146

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:16-cr-00224-3—Patricia A. Gaughan, District Judge.

Argued: October 21, 2025

Decided and Filed: May 29, 2026

Before: WHITE, LARSEN, and NALBANDIAN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────

## OPINION

─────────────

HELENE N. WHITE, Circuit Judge. Defendant Radu Miclaus appeals the imposition of a $853,651.99 restitution obligation on resentencing after remand, arguing that the government affirmatively waived restitution, he was not provided with the underlying information on which the restitution amount was based, and the imposition of restitution for the first time on remand

was vindictive and violated his due process rights. We AFFIRM the imposition of restitution but VACATE and REMAND for resentencing on the amount of restitution.

## I. Background

Beginning around January 2007, Radu Miclaus, Bogdan Nicolescu ("Nicolescu"), and Tiberiu Danet ("Danet") participated in a criminal conspiracy called the Bayrob Group ("Bayrob") operating out of Romania. Through various schemes, including an online eBay auction-fraud scheme, a cryptocurrency mining scheme, and a network of bots, Bayrob infected more than 60,000 computers, primarily located in the United States, with proprietary malware that allowed it to steal identities, money, and personal identifying information. According to the FBI, Bayrob's eBay scheme generated between $3,500,000 and $4,500,000 in losses. The crypto-mining scheme was also highly profitable, netting Bayrob approximately $10,000 to $20,000 per month in 2014, and $30,000 to $40,000 per month in 2015 and 2016.

In 2016, Miclaus, Nicolescu, and Danet were indicted on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; twelve counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of conspiracy to commit computer fraud, in violation of 18 U.S.C. § 371; one count of conspiracy to traffic in counterfeit service marks, in violation of 18 U.S.C. § 2320(a)(1); five counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and (2); and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). They were also charged with a sentencing enhancement pertaining to all counts for false registration of a domain name, pursuant to 18 U.S.C. § 3559(g)(1). Danet pleaded guilty to certain charges, and Miclaus and Nicolescu proceeded to trial. The jury convicted Miclaus and Nicolescu on all counts but acquitted them on the sentencing enhancement for registering false domain names.

A presentence investigation report ("PSR") was prepared on July 12, 2019. It calculated Miclaus's base offense level to be 35 and applied several enhancements for a total offense level of 43. On the issue of restitution, the PSR stated that "[t]he provisions of the Mandatory Victim Restitution Act of 1996 [('MVRA')] apply to this Title 18 offense," probation had "received approximately 80 victim impact statements, which are forthcoming" and had "requested further

information about restitution from the government," but "[a]s of the date of this report, the government was still working on restitution amounts." PSR at p. 18. Miclaus objected and reserved his right to object to the victim impact statements, which he received after the initial PSR. The PSR additionally mentioned restitution in its assessment of Miclaus's financial conditions, noting that, although Miclaus had no liabilities, "it is anticipated that he will have a large restitution obligation." *Id.* at p. 24. The PSR stated that under both 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1, "restitution shall be ordered" and that "[t]he government will provide the information at a later date." *Id.* at p. 27. Although the PSR was revised on September 16 and October 15, 2019, no changes were made to any section discussing restitution.

The parties submitted sentencing memoranda. Miclaus requested additional time before sentencing to evaluate the victim restitution statements. The district court held a sentencing hearing on December 6, 2019. In addressing Miclaus's objection to the victim impact statements paragraph in the PSR, the district court stated, "I don't think anybody is asking for restitution here," to which the government replied "No, Your Honor." R. 230, PID 3286. Based on the government's statement, Miclaus withdrew his objection as "moot." *Id*. The district court sentenced Miclaus to a total of 216 months' imprisonment. It did not order restitution.

Danet was sentenced on January 8, 2020 to 120-months' imprisonment and ordered to pay $529,126.41 in restitution. The judgment attached a sealed "Unredacted Victim Restitution List." Danet's restitution amount was amended to $842,483.93 on January 16, 2020, and to $853,651.99 on December 22, 2020.

Miclaus and Nicolescu each appealed one count of conviction and certain sentencing enhancements applied by the district court. We affirmed Miclaus's conviction and several of the sentencing enhancements but reversed other enhancements and remanded for resentencing. *See United States v. Nicolescu*, 17 F.4th 706, 714–31 (6th Cir. 2021). The parties filed sentencing memoranda regarding the scope of the remand order. Both Miclaus and the government argued that the remand order was limited and asked the district court not to conduct de novo resentencing. In the alternative, the government argued that, if the court determined that the remand was general, it would request "restitution in the amount of $842,483.93 consistent with

the Amended Order of Restitution dated December 22, 2020" for Danet.[1]  R. 289, PID 6306–07.  The PSR was not updated before resentencing.

At the February 1, 2023 resentencing hearing, the district court concluded that the remand order was general and de novo resentencing was warranted.  The government then asked that Miclaus "be joint[ly] and sever[ally] liable in restitution with defendant Danet [in] the amount of $853,651.99," which it explained "is a number derived from loss amounts of victims provided by the Government in Danet's sentencing."  R. 296, PID 6839–40.  Miclaus neither rebutted nor objected to the government's restitution request.  When asked directly by the district court if he had "any objection to the restitution," Miclaus, via counsel, responded that he had "[n]o objection to the restitution."  *Id.* at PID 6847.

The district court sentenced Miclaus to a total of 216 months' imprisonment and ordered restitution in the amount of $853,651.99, for which Miclaus would be jointly and severally liable with all other codefendants.  The judgment order attached a "Redacted Victim List" that included the restitution amount for dozens of anonymized victims along with an "Unredacted Victim List."  This appeal followed.

## II. Analysis

Miclaus raises three challenges to the imposition of restitution on remand:  (1) the government affirmatively waived any request for restitution at the initial sentencing hearing; (2) the information relied on by the district court to determine the amount of restitution was not provided to Miclaus; and (3) the imposition of restitution for the first time on remand was vindictive and violated Miclaus's due process rights.

We typically review waiver as a mixed question of law and fact, reviewing a district court's determination of the underlying facts under the clearly erroneous standard and its legal conclusions de novo.  *United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009).  "We review the propriety of a restitution order de novo" and "[t]he amount of the restitution award . . . under

---

[1]The government appears to have mistakenly referred to the restitution amount listed in the January 16, 2020 First Amended Restitution Order for Danet rather than the updated amount of $853,651.99 in Danet's December 22, 2020 Second Amended Restitution Order.

an abuse-of-discretion standard." *United States v. Church*, 731 F.3d 530, 535 (6th Cir. 2013). However, when a party fails to object in the district court, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). The parties agree that the plain-error standard applies here. To succeed on plain-error review, Miclaus must show that: (1) an error occurred; (2) "the error was plain, i.e., obvious or clear"; (3) the error affected his substantial rights; and (4) "this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Schulte*, 264 F. 3d 656, 660 (6th Cir. 2001).

**A.**

Miclaus first argues that, because the government did not request restitution at the original sentencing hearing—and, in fact, affirmatively confirmed that it was not requesting restitution—"the doctrine of waiver precludes the government from requesting it on resentencing." Appellant's Br. at 12–16. According to Miclaus, "when [as here] the government fails to raise an issue it could (and should) have raised at the initial sentencing hearing, the issue is waived on resentencing after a direct appeal." *Id.* at 12 (citing *United States v. Lanier*, No. 21-5619, 2023 WL 4963190, at *8 (6th Cir. August 3, 2023)). According to the government, it properly requested that the court impose restitution on resentencing and it could not waive the district court's imposition of restitution on resentencing under the MVRA.

Because the parties do not dispute on appeal that the remand was general, the issues before us are the scope of that remand and whether the government's affirmative representation at the original sentencing that it was not seeking restitution precluded it from requesting restitution on remand. Starting with the scope issue, the circuits are split regarding the breadth of a mandate for resentencing on remand. Most embrace the view that, on a general remand, the district court is free to conduct de novo resentencing and take any evidence and hear any argument that it could have considered originally, including arguments that have been waived or forfeited. *See, e.g.*, *United States v. Tat*, 97 F.4th 1155, 1161 (9th Cir. 2024) ("vacating an appellant's original sentence legally wipes the slate clean" and on remand "the defendant is placed in the same position as if he or she had never been sentenced" (citation modified)); *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996) ("[W]here the appellate court has not

specifically limited the scope of the remand, the district court generally has discretion to expand the resentencing beyond the sentencing error causing the reversal" and can review "any relevant evidence [it] could have heard at the first sentencing hearing."); *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996) (rejecting waiver argument because "once a criminal sentence is vacated, the sentence and any consequences that flow from that sentence are totally wiped away" and, on remand, "the district court is free to reconstruct the sentence utilizing any of the sentence components").[2]   Others hold that remands are by default limited in scope and, absent express direction otherwise, a district court "may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision."  *United States v. Whren*, 111 F.3d 956, 960 (D.C. Cir. 1997); *see also United States v. Lee*, 358 F.3d 315, 323 (5th Cir. 2004) (limiting district court's discretion on remand "to the gathering of relevant facts and evidence on the specific and particular issues heard by the appeals court and remanded for resentencing" (citation modified)); *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) (explaining that "on remand and . . . [absent] . . . special circumstances," a district court may consider only issues remanded, issues arising for the first time on remand, or issues that were previously timely raised but undecided); *United States v. Ticchiarelli*, 171 F.3d 24, 32 (1st Cir. 1999) ("[U]nless the court of appeals has expressly directed otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision." (citation modified)).[3]

---

[2]*See also United States v. Merrell*, 37 F.4th 571, 576 (9th Cir. 2022) ("[R]esentencing [after a general remand] is on an open record, and the district court generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo." (citation modified)); *United States v. Dunlap*, 452 F.3d 747, 749–50 (8th Cir. 2006) (finding the district court did not err in allowing the government to present evidence at resentencing that it failed to introduce at the first sentencing because the district court "can hear any relevant evidence on that issue that it could have heard at the first hearing" (internal quotation marks omitted)).

[3]The Second Circuit takes a middle-ground approach to the question whether a vacatur and remand of a sentence contemplates a de novo resentencing absent specific direction from the court of appeals.  *See United States v. Quintieri*, 306 F.3d 1217, 1228 n.6 (2nd Cir. 2002) (holding that, for resentencing following vacatur of a conviction, "we in effect adhere to the *de novo* default rule . . . .  But when a resentencing is necessitated by one or more specific sentencing errors, unless the correction of those sentencing errors would undo the sentencing calculation as a whole or the 'spirit of the mandate' otherwise requires *de novo* resentencing, we in effect adhere to the . . . default rule of limited resentencing").

Our circuit's "long settled and clear" approach squarely follows the majority. *United States v. Pembrook*, 79 F.4th 720, 727 (6th Cir. 2023); *see also United States v. Obi*, 542 F.3d 148, 154 (6th Cir. 2008) ("A majority of the circuits that have spoken on this issue, including this one, follow a basic rule that a district court can review sentencing matters *de novo* unless the remand specifically limits the lower court's inquiry." (citation modified)). As we recently explained, on a general remand, a district court may:

> [R]edo the entire sentencing process, including considering new evidence and new issues; revisit other findings relating to the previous sentencing proceedings, and reverse its prior findings; consider new objections to the presentence report; take any evidence and hear any argument that it could have considered in the original sentencing proceeding; and *allow parties to raise issues even if they would have otherwise been waived*.

*Pembrook*, 79 F.4th at 727−28 (citation modified and emphasis added); *see also United States v. Garcia-Robles*, 640 F.3d 159, 166 (6th Cir. 2011) ("A general remand allows the district court to resentence the defendant de novo, which means that the district court may redo the entire sentencing process, including considering new evidence and issues." (quoting *United States v. Moore*, 131 F.3d 595, 597–98 (6th Cir. 1997))). "[T]he only constraint under which the [d]istrict [c]ourt must operate, for the purposes of resentencing, is the remand order itself." *United States v. Jennings*, 83 F.3d 145, 151 (6th Cir. 1996); *see also United States v. Gibbs*, 626 F.3d 344, 350 (6th Cir. 2010) ("The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." (internal quotation marks omitted)). "A general remand effectively wipes the slate clean," thus permitting parties to advance arguments they may have forfeited or waived at the prior sentencing. *United States v. McFalls*, 675 F.3d 599, 606 (6th Cir. 2012); *see also Tat*, 97 F.4th at 1161 ("[B]ecause [defendant] was to be resentenced de novo, she was free to raise any timely objections at that resentencing, without regard to whether she might have forfeited such objections at the prior sentencing that was completely set aside.").

Miclaus argues that, with limited exceptions, a general remand creates a clean slate only for those issues preserved by the parties.[4] To reach this conclusion, Miclaus relies on *United*

---

[4]According to Miclaus, the only exception to the waiver doctrine is for issues a party "had been either unable to assert initially or had only become logically relevant following remand." Appellant's Br. at 12 (citing *Lanier*, 2023 WL 4963190, at *8). Miclaus argues that the exception does not apply here because there were no

*States v. Lanier*, an unpublished case about forfeiture in the resentencing context.[5]  In *Lanier*, the government did not request the application of a vulnerable-victim enhancement at the initial sentencing and neither objected to nor cross-appealed the enhancement's absence from Lanier's initial sentence.  2023 WL 4963190, at *2, 3, 8.  After Lanier prevailed on a § 2255 motion, the probation department prepared a new PSR that proposed a vulnerable-victim enhancement.  *Id.* at *2.  The district court applied the enhancement at resentencing over Lanier's objection.  *Id.* Lanier appealed and this court reversed, finding that the government had "waived" the enhancement by failing to pursue it at Lanier's original sentencing.  *Id.* at *8 ("Nothing prevented the government from raising the vulnerable victim enhancement in Lanier's original sentencing," and "[t]here were no changes in the caselaw, Guidelines, or understanding of the facts" relevant to the vulnerable victim enhancement between the initial sentencing and resentencing).

However, this court has rejected, rather than followed, *Lanier*.  A few weeks after *Lanier*, we issued a published decision in *United States v. Pembrook*, an appeal from a resentencing, and rejected the argument that the government had forfeited a sentencing enhancement "that it could have requested, but did not request, at the original sentencing."  79 F.4th at 727.  We reaffirmed that de novo sentencing wipes the slate clean and forecloses any effort "to exclude issues that were forfeited (waived) in the original sentencing" from "the otherwise limitless de novo resentencing."  *Id*. at 733–34.  *Pembrook* specifically rejected any attempt to import limitations stemming from the appellate-forfeiture doctrine—which prohibits an appellant in a second

changes between the sentencing and resentencing and the government was able to assert its restitution request at the initial sentencing.  However, this standard arises from the appellate-forfeiture context.  Indeed *Lanier*, on which Miclaus relies, itself cites *United States v. Boudreau*, where we found that the government had waived an objection that it failed to raise in a prior appeal.  *See* 564 F.3d at 435 n.1.  As will be discussed *infra*, appellate-forfeiture rules are inapplicable here.

[5]Miclaus analyzes *Lanier* as a case about waiver, not forfeiture, in the resentencing context.  Forfeiture and waiver are distinct concepts.  *United States v. Petlechkov*, 922 F.3d 762, 767 (6th Cir. 2019).  "[F]orfeiture is the failure to make the timely assertion of a right" and "waiver is the intentional relinquishment or abandonment of a known right."  *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation modified).  *Lanier* deals with forfeiture.  *Compare Lanier*, 2023 WL 4963190 (discussing the government's failure to request a vulnerable victim enhancement under the Guidelines at the original sentencing), *with Pembrook*, 79 F.4th at 724 n.1 (clarifying that the government's failure to request a physical restraint enhancement under the Guidelines at the original sentencing constitutes forfeiture, not waiver), *and id.* at 738 n.1 (Gibbons, J., dissenting) (conceding the same and stating that the dissent's use of the term "waiver" is "for clarity" "because many of the relevant cases use that term").

appeal from raising an error in the second appeal that could have been, but was not, raised in the first appeal—into the resentencing context. *Id*. at 730–737. And it rejected *Lanier* head-on as "foreclosed by precedent and dead on arrival" because it "contradicts—and ignores—the entire body of Sixth Circuit precedent about de novo sentencing" and "misreads and misrepresents" *United States v. McKinley*, 227 F.3d 716 (6th Cir. 2000), a case about the appellate-forfeiture doctrine.**[6]** *Id.* at 735, n.8.

*Pembrook* made clear that the appellate-forfeiture doctrine applies only to appeals and appellants in a second appeal. *Id.* at 730. There, like here, "[t]he defendants confuse a sentencing proceeding with an appeal and seek to apply the appellate-forfeiture rule to sentencing-and-resentencing as if they were first appeal and second appeal" which "ignores and contradicts our law about the breadth of de novo resentencing." *Id.* at 733. Indeed, we concluded that "a general remand intends a de novo sentencing in which either party may present new evidence or raise new issues, even issues that were waived at the original sentencing" and stressed that "a defendant being resentenced on remand risks . . . a harsher sentence." *Id*. at 737.

Miclaus asserts that *Pembrook* is inapplicable because it is inconsistent with this court's prior precedent. But he relies on *Pembrook*'s dissenting opinion for this assertion. A dissenting opinion is not law. Miclaus also argues that *Pembrook* does not apply because it concerned forfeiture, rather than waiver, as in his case, and therefore we should treat *Pembrook*'s statements regarding waiver as mere dicta.

But *Pembrook* explicitly "reject[ed] the defendants' claim that the government was barred by forfeiture (waiver) from requesting the additional sentencing enhancement at the de novo resentencing." *Id.* at 737. *Pembrook*'s general remand holding logically extends to a

---

**[6]**In *McKinley*, we held that the waiver doctrine barred the government from raising an issue on a subsequent appeal that it had failed to raise on a prior appeal. 227 F.3d at 718 ("While the district court may entertain any issues it feels are relevant to the overall sentencing decision (following a general remand), this does not give the parties license to re-assert issues that they should have raised during an earlier appeal." (internal citation omitted)). However, we have declined to extend this logic to the resentencing context. For example, in *United States v. McFalls*, the government requested that the defendant's sentence run consecutively at de novo resentencing after neither requesting consecutive sentencing at the initial sentencing hearing nor cross-appealing. 675 F.3d at 602–03. The defendant argued that the government had waived its request for consecutive sentencing. *Id.* at 606. We rejected this argument, finding that *McKinley*'s "waiver doctrine" is inapplicable where, on a second appeal, the government "seeks an affirmance of the re-sentence" and is not "seeking to raise. . . . now" an issue it did not previously appeal. *Id*.

resentencing scenario involving waiver instead of forfeiture. *Pembrook*'s rejection of "any limits on de novo resentencing" relies on case law holding that de novo resentencing is limitless and that the district court may revisit and reverse its prior findings. *See, e.g.*, *Pepper v. United States*, 562 U.S. 476, 507 (2011) (explaining that a court's "remand[] for a *de novo* resentencing . . . effectively wipe[s] the slate clean"); *Obi*, 542 F.3d at 154 (finding that, following a general remand, the district court had "discretion to conduct the second sentencing hearing *de novo*" and therefore "acted within its authority to correct the evidentiary record and revisit the issue of obstruction"); *Moore*, 131 F.3d at 597 ("A general remand allows the district court to resentence the defendant de novo, which means that the district court may redo the entire sentencing process including considering new evidence and issues."). In any event, Miclaus's task is to establish not just error but plain error. So even if his reading of *Pembrook* is correct, it is not plainly correct.

Miclaus further relies on language in *Greenlaw v. United States*, 554 U.S. 237 (2008). There, the Supreme Court found that the cross-appeal doctrine barred the Eighth Circuit from sua sponte increasing Greenlaw's sentence by fifteen years to reflect the statutory mandatory minimum sentence where the government had not cross-appealed. *Id.* at 247–53. The Court emphasized that, in increasing Greenlaw's sentence on its own initiative, the Eighth Circuit "did not advert to the procedural rules setting deadlines for launching appeals and cross-appeals" and, more globally, that neither the plain-error rule, nor statutes governing appellate review of criminal sentences, override the cross-appeal rule. *Id.* at 252–53. Recognizing that the cross-appeal doctrine is inapplicable here, Miclaus directs us to a footnote in *Greenlaw* stating that the district court is bound by the "default and forfeiture doctrines" on resentencing after remand and, as a result, it would be "hard to imagine a case in which a district court, after a court of appeals vacated a criminal sentence, could properly increase the sentence based on an error the appeals court left uncorrected because of the cross-appeal rule." Response to R. 28(j) Ltr. at 1–2 (quoting *Greenlaw*, 554 U.S. at 254 n.8).

Miclaus frames the district court's imposition of restitution after the government's prior representation that it was not seeking restitution and Miclaus's successful appeal as similarly unimaginable. True, the government did not cross-appeal the omission of restitution in the

district court's initial sentence, but neither was the absence of restitution left untouched because of the cross-appeal rule. And, as the *Greenlaw* dissent noted, there are in fact several circumstances, similar to those here, where the government did not cross-appeal a sentence, but "the sentence *was* ultimately lengthened when the error was corrected on remand." *Greenlaw*, 554 U.S at 265 n.2 (Alito, J., dissenting). Additionally, in subsequent decisions after *Greenlaw*, the Supreme Court has indicated that a district court's ability to resentence following a general remand is not limited to the determinations made at the original sentencing. *See, e.g.*, *Pepper*, 562 U.S. at 505–07 (holding that a general remand does not place any limits on the district court's discretion at resentencing and that the district court was permitted to reconsider all elements of the sentence including those not appealed). In any event, given our circuit's broad review of the scope of a general remand, we are unable to find plain error based on these cases. *See Pembrook*, 79 F.4th at 737 (recapping what a general remand entails and including the "risk[] that the recalculated guidelines and reassessed sentencing factors might lead to a harsher sentence"); *United States v. Garcia-Ortiz*, 792 F.3d 184, 192 n.11 (1st Cir. 2015) (rejecting a similar waiver argument where the district court ordered "statutorily-mandated restitution" under the MVRA for the first time at resentencing and noting the remand also "gave the district court broad discretion"); *cf. United States v. Pileggi*, 703 F.3d 675, 680 (4th Cir. 2013) (holding that the mandate rule barred the district court from reconsidering the restitution amount following a limited remand for only the term of imprisonment and not to revisit the defendant's entire sentence, including the restitution order).[7]

---

[7]In *Pileggi*, the Fourth Circuit interpreted *Pepper* as not "abolish[ing] waiver in the context of re-sentencing" and concluded that "[t]he government waived any challenge to the amount of restitution by failing to raise it on appeal." 703 F.3d at 680. But, because *Pileggi* concerned a limited remand, its conclusion regarding *Pepper* is not applicable here. Indeed, *Pileggi* itself distinguished the limited vacatur before it of "only [the defendant's] 600-month term, not his entire sentence" with *Pepper*, where the appellate court "set aside the defendant's entire sentence and remanded for a de novo resentencing" and therefore "the remand order had effectively wiped the slate clean." *Id.* (citation modified). *Pileggi* additionally recognized that district courts maintain the "*discretion* to decline to consider waived arguments on remand" where, like here, sentences are vacated entirely following an appeal. *Id.* at 680, n.9 (quoting *United States v. Susi*, 674 F.3d 278, 285 (4th Cir. 2012)); *see also Garcia-Robles*, 640 F.3d at 166 ("A general remand allows the district court to resentence the defendant de novo, which means that the district court *may* redo the entire sentencing process, including considering new evidence and issues." (emphasis added)). And further, the Ninth Circuit, which adopts a view of the scope of remand that is comparable to our case law, understands neither *Pepper* nor *Greenlaw* to preclude the district court from considering waived arguments following a general remand. *See Tat*, 97 F.4th at 1161 ("[B]ecause Ms. Tat was to be resentenced de novo, she was free to raise any timely objections at that resentencing, without regard to whether she might have forfeited such objections at the prior sentencing that was completely set aside.").

Moreover, the MVRA requires restitution when a Title 18 offense involves fraud or an identifiable victim suffers pecuniary loss. 18 U.S.C. § 3663A(c)(1); *In re Robinson*, 764 F.3d 554, 560–61 (6th Cir. 2014); *United States v. Mitan*, No. 21-5834, 2025 WL 1392242, at *8 (6th Cir. Apr. 9, 2025). "The MVRA removed judicial discretion in ordering restitution and made such orders mandatory in nearly all cases where a victim suffered an identifiable monetary loss." *In re Robinson*, 764 F.3d at 561; *accord* 18 U.S.C. § 3663A(a)(1) ("Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court *shall* order . . . that the defendant make restitution to the victim of the offense." (emphasis added)). *But see* 18 U.S.C. § 3663A(c)(3) (granting the district court discretion to decline to order restitution in limited circumstances not applicable here).

At a minimum, Miclaus's twelve convictions for wire fraud are offenses against property under Title 18 committed by fraud. *See United States v. Faulkenberry*, 614 F.3d 573, 580–81 (6th Cir. 2010) (listing the elements of wire fraud). Those convictions triggered mandatory restitution under the MVRA. *See* 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). So, upon de novo resentencing, the district court had to order Miclaus to pay restitution. *See id.*

Finally, contrary to Miclaus's assertion in his R. 28(j) letter, the Supreme Court's recent decision in *Ellingburg v. United States* does not require a different outcome. In *Ellingburg*, the Court considered an Ex Post Facto Clause challenge to the restitution obligation of a plaintiff who committed his crime before the MVRA's enactment. 607 U.S. 163 (2026). Based on the MVRA's statutory text and structure, as well as Court precedent, the Court concluded that "[r]estitution under the MVRA is plainly criminal punishment for purposes of the Ex Post Facto Clause." *Id.* at 166. In reaching this conclusion the Court stated that "[a]t the sentencing proceeding where restitution is imposed, the Government, not the victim, is the party adverse to the defendant." *Id.* Based on this language, Miclaus argues that the government as adverse party therefore "has the ability to affirmatively waive restitution under the MVRA." Appellant's R. 28(j) Ltr. at 2. But nowhere in *Ellingburg* does the Court discuss restitution in conjunction with waiver or the scope of a general remand. And we do not read the Court's statement that the government is the adverse party for restitution purposes to either alter the broad scope of de novo resentencing after a general remand or support the inference that the government can therefore

waive restitution. Indeed, *Ellingburg* elsewhere reaffirmed that restitution is mandatory for defendants convicted of qualifying federal crimes, and that it serves both punitive and compensatory goals. *Ellingburg*, 607 U.S. at 165, 168.

We recognize that Miclaus's success in his first appeal proved to be a Pyrrhic victory on remand, but, in light of our case law, we are unable to say that the district court plainly erred in permitting the government to raise and seek restitution on remand or in ordering restitution for the first time on resentencing despite the government's prior position.

**B.**

Having determined that the district court had the authority to impose restitution, we turn to Miclaus's challenge to the process the court followed in doing so.

The MVRA expressly mandates the procedures to be followed by district courts when imposing restitution. *See* 18 U.S.C. § 3663A(d) ("An order of restitution . . . shall be issued and enforced in accordance with section 3664."). The district court must "order the probation officer to obtain and include in its presentence report, or in a separate report, . . . information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a). The report must contain "a complete accounting of the losses to each victim." *Id.* And the court must "disclose to both the defendant and . . . the [g]overnment all portions of the presentence or other report pertaining" to the victim's losses and the restitution order. *Id.* at 3664(b).

"Federal Rule of Criminal Procedure 32 protects the right to due process by requiring disclosure of most information relied upon at sentencing." *United States v. Hayes*, 171 F.3d 389, 392 (6th Cir. 1999) (citing Fed. R. Crim. P. 32(c)(3)(A)). Like the MVRA, it requires that "when the law provides for restitution," the PSR must include "information sufficient for a restitution order." Fed. R. Crim. P. 32(d)(2)(D). Pursuant to Rule 32, the probation officer must give the PSR to the parties "at least 35 days before sentencing unless the defendant waives this minimum period." *Id.* at 32(e)(2). And, at sentencing, the court must verify that the defendant has reviewed the PSR, provide the defendant with a summary of information excluded from the PSR on which the court intends to rely, and give the defendant "a reasonable opportunity to comment on that [excluded] information." *Id.* at 32(i)(1)(B). "[I]mplicit in the adversarial

scheme created by Rule 32" is "the right to review other information relied on by a court at sentencing." *United States v. Hamad*, 495 F.3d 241, 245 (6th Cir. 2007) (citation modified). We require "district courts [to] be in literal compliance with the requirements of Rule 32." *United States v. Marrero*, 651 F.3d 453, 473 (6th Cir. 2011) (citation omitted); *see also United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000) ("This Circuit has consistently construed the requirements of Rule 32 in a strict manner, largely because the rule protects a defendant's right to due process.").

The parties agree that the district court did not comply with either the MVRA or Rule 32's requirements. First, no version of Miclaus's PSR included information indicating the amount of restitution to be imposed. The initial July 12, 2019 PSR and all subsequently revised versions contain the same language that the probation office has "received approximately 80 victim impact statements, which are forthcoming" and that it is waiting for further information from the government; none contain a complete accounting of the losses of each victim. PSR at p. 18, 41–42, 77–78. Miclaus received no additional information, including in the government's initial sentencing memorandum, about the 80 victim-impact statements or the restitution amount before or at his initial sentencing on December 6, 2019. Nor was the PSR updated to include this information following either Miclaus's successful direct appeal or prior to his resentencing on February 1, 2023. The first time Miclaus received an accounting of the losses for each victim was when it was attached to the resentencing judgment.

Second, Miclaus was not privy to the underlying calculations relied on by the government and the district court. The government requested that Miclaus be "joint[ly] and sever[ally] liable" with Danet for $853,651.99 in restitution, "a number derived from loss amounts of victims provided by the Government in Danet's sentencing," but provided no other information about how those calculations were made. R. 296, PID 6839–40. Although Danet's restitution judgment entries are publicly available, the underlying calculations and loss amounts of victims are under seal and unavailable to Miclaus. At the resentencing hearing, the district court did not disclose the underlying calculations, loss amounts, or number of victims to Miclaus when imposing restitution.

We agree with the parties that this was plain error. *See United States v. Coppenger*, 775 F.3d 799, 805 (6th Cir. 2015) ("This procedure, relying on specific detailed information not disclosed to the defendant, is fundamentally at odds with the adversarial scheme established in Rule 32."). The court's failure denied Miclaus his substantial rights by depriving him of "notice and the opportunity to respond to information relied on in determining [his] sentence." *Hayes*, 171 F.3d at 394. The "use of undisclosed evidence against a criminal defendant, without the safeguards of Rule [32], is the type of error that may undermine the fairness of a proceeding and that certainly tarnishes the public reputation of judicial proceedings." *Id.* at 395. For that reason, we vacate and remand for resentencing in conformity with the MVRA and Rule 32's procedures.

## C.

Finally, Miclaus argues that the imposition of restitution on resentencing was presumptively "vindictive and violates [his] right to due process." Appellant's Br. at 23. "[A] defendant's due process rights [are] violated when, after a successful appeal, a harsher sentence was imposed as a result of vindictiveness." *United States v. Duso*, 42 F.3d 365, 366 (6th Cir. 1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969)). Because Miclaus was initially sentenced to 216 months' imprisonment only, his sentence following resentencing (216 months' imprisonment plus restitution) is more severe.

Although a harsher sentence imposed by the same judge following remand typically gives rise to the presumption of vindictiveness, the presumption does not apply in every case. *See Goodell v. Williams*, 643 F.3d 490, 498 (6th Cir. 2011) (noting that "the *Pearce* presumption" applies "only where the circumstances of the particular case give rise to a *need* to guard against vindictiveness"); *cf. United States v. Russ*, 600 F. App'x 438, 444 (6th Cir. 2015) ("[W]hen, as here, a conviction is reversed on appeal and the same judge imposes a more severe sentence after a new trial, a presumption of vindictiveness arises."). Rather, the presumption applies only when there is a "reasonable likelihood" of actual vindictiveness by the sentencing court. *Alabama v. Smith*, 490 U.S. 794, 799 (1989). We assess whether there is a reasonable likelihood of actual vindictiveness on a case-by-case basis and ask "whether it is more likely than not that the judge who imposed the higher sentence was motivated by vindictiveness." *United States v. Johnson*,

715 F.3d 179, 182 (6th Cir. 2013). Without a "realistic motive for vindictive sentencing," the presumption is inappropriate. *Texas v. McCullough*, 475 U.S. 134, 139 (1986).

There is no reasonable likelihood of actual vindictiveness here to support application of the presumption. Miclaus argues that "[t]he only change in the circumstances was [his] successful direct appeal." Appellant's Br. at 24. But, because Miclaus was convicted of a covered offense under the MVRA, restitution was mandatory and should have been initially imposed. *See* 18 U.S.C. §§ 3663A(a)(1), 3663A(c)(1)(A)(ii), (B) (stating covered offenses include any offense against property under Title 18, "including any offense committed by fraud or deceit" where "an identifiable victim or victims has suffered a . . . pecuniary loss"); *In re Robinson*, 764 F.3d at 561 ("The MVRA removed judicial discretion in ordering restitution and made such orders mandatory in nearly all cases where a victim suffered an identifiable monetary loss."); *United States v. McDougal*, 368 F. App'x 648, 652 (6th Cir. 2010) ("[T]he MVRA permits no discretion on the part of the district court once liability has been found: it '*shall* order . . . that the defendant make restitution.'" (citation modified)). And we have found no actual vindictiveness where, as here, a district court corrected an error at resentencing that resulted in a longer sentence for the defendant. *Duso*, 42 F.3d at 367; *id.* at 369 (underscoring the "statutorily mandated sentencing scheme" that the district court has an "obligation to enforce . . . as written"). "If the district judge errs in favor of the defendant . . . the defendant bears the risk that the error may be corrected against the defendant's favor" at resentencing following a successful appeal. *Id.*[8]

Because the presumption does not apply, Miclaus must show actual vindictiveness. *See United States v. Rodgers*, 278 F.3d 599, 604 (6th Cir. 2002). But he does not raise an actual vindictiveness argument. To the contrary, the only basis for Miclaus's claim is the fact that the same district court imposed restitution for the first time on resentencing.

---

[8]We can also identify at least one other relevant change. Danet's judgment, including the restitution order for which Miclaus is jointly and severally liable, was entered after Miclaus's initial sentencing. Therefore, the underlying information on which the amount of Miclaus's restitution was based came to the district court's attention in the intervening period between the initial sentencing and resentencing. To be sure, the district court erred in failing to allow Miclaus to review or challenge that information, but that error does not negate the timing for purposes of determining vindictiveness.

### III. Conclusion

For the reasons set out above, we AFFIRM the imposition of restitution but VACATE and REMAND for resentencing on the amount of restitution.